No. 54,353

STATE OF KANSAS, *Appellee,* v. MALCOM T. HUTTON, *Appellant.*

(657 P.2d 567)

Opinion filed January 14, 1983.

*David Michael Rapp,* of Moore, Rapp & Schodorf, of Wichita, argued the cause, and *John Terry Moore,* of the same firm, was on the brief for the appellant.

*Jack Peggs,* deputy district attorney, argued the cause, and *Clark V. Owens,* district attorney, and *Robert T. Stephan,* attorney general, were with him on the brief for the appellee.

The opinion of the court was delivered by

SCHROEDER, C.J.: This is an appeal in a criminal action from a jury verdict finding Malcom T. Hutton (defendant-appellant) guilty of first-degree murder (K.S.A. 21-3401). The appellant contends that the evidence was not sufficient to support the verdict of first-degree murder, that the trial court erred in failing to instruct the jury on lesser included offenses, and that the bill of particulars furnished by the prosecution was insufficient and misleading, preventing the defendant from preparing his defense.

On the morning of January 30, 1981, Ella Mae Cherry was found dead in her car on North Piatt Street in Wichita, Kansas. The victim had been stabbed in the neck by a sharp instrument which had punctured the jugular vein and left lung. It was apparent that the murder had occurred the day before as an eleven-year-old boy had seen the body in the car around 4:30 in the afternoon when he had come home from school.

In October 1980 the victim's home had been burglarized and her television set and dog were stolen. Mrs. Cherry lived alone and was fond of the dog. She made numerous efforts to find the dog, including offering a $250 reward for its return in a local advertisement flyer, Pennypower. One such offer appeared in the Pennypower for the northeast section of Wichita for January 26 to February 2, 1981.

A co-worker testified that the day of the murder the victim told her that she had received a telephone call from someone who claimed he had her dog. The victim was supposed to meet the caller that afternoon, but said that she was skeptical about the meeting, because "it just didn't sound right." The witness believed Cherry said she was to meet the caller on Grove Street. After work Mrs. Cherry cashed her paycheck in order to have enough money for the reward, and put the cash in the trunk of her car.

The appellant was charged with first-degree murder, or, in the alternative, felony murder and aggravated robbery. He was convicted of first-degree murder but was acquitted on the felony murder and aggravated robbery charges. On appeal the defendant first contends the trial court erred in denying the defendant's motion for a directed verdict as the evidence was insufficient to support a conviction of premeditated first-degree murder. A review of the record shows that sufficient evidence was presented by the State to support the verdict of the jury.

At the time of the murder the defendant lived in a duplex on North Grove Street with four other persons, including Dianne Benford and the defendant's girlfriend, Judy Woods. Benford testified that either the day of the murder or the day before she overheard the defendant make a telephone call around 11:00 a.m. during which he asked if the other person was looking for a lost dog, and stated that he had the dog at Minneapolis and Minnesota Streets. Prior to making the call the defendant had been looking in a newspaper. The Pennypower was received at their residence on Grove Street. Benford testified that on the day of the murder she had looked for, but could not find, the only butcher knife in the home. On cross-examination Benford admitted that she did not tell police about the phone call until five months after the murder.

Troy Barnes, a stepson of the defendant's brother, testified that when he saw news of the murder on television he recognized the victim's car as one in which he had seen the defendant sitting between 3:00 and 4:00 in the afternoon of the day of the murder. The car had been parked in front of the defendant's brother's home on North Minnesota Street. A white woman was seated on the driver's side of the car and the defendant was on the passenger side. Barnes testified he walked up to the car and greeted the defendant and then went into the house. The defendant came in the house a few minutes later. Barnes testified that the defendant's sister who lived there, Cynthia Hutton, asked the defendant what he was doing in the car and he had replied something about a dog. The defendant then left the house, but Barnes did not actually see him get into the car. Barnes testified that when he heard about the murder on television he told his mother and the defendant's sister-in-law that he had seen the defendant in the car, but did not report this to police until later when they questioned him concerning the defendant's possible involvement in the murder.

It was established that the distance between Piatt Street where the car was found and Grove Street where the defendant lived was two blocks.

The defendant's girlfriend, Judy Woods, testified that when the defendant arrived home around 7:00 or 8:00 p.m. the day of the murder he had scratches on his hands and neck and had blood on the front of his shirt. The defendant told her the blood came from

a cut on his hand he received from jumping a fence behind where they lived. Woods recalled that Dianne Benford had asked where the butcher knife was on the day of the murder. Woods thought the defendant might have been involved in the murder after police began questioning him a few weeks later, so she gave the defendant's sister, Carla Hutton, the butcher knife and asked her to get rid of it because it was the murder weapon. Carla Hutton later turned the knife over to police. She testified the defendant asked her where the knife was so she told him she had thrown it in someone's yard. The defendant looked for the knife in the yard until he realized she was not telling him the truth. The defendant testified he wanted the knife back because it was the only one Benford had and she was upset about losing it and wanted it back.

Sometime after the murder the defendant was riding around with Cynthia Hutton and another woman in his car, drinking and smoking marijuana. A conversation ensued during which one of the women asked the defendant if he had killed Cherry and he replied that he had because she wouldn't give him the money and he got only $13 from her. However, both women and the defendant testified that the reply was made in a joking manner. Cynthia Hutton testified that after the defendant said he had killed Cherry he then denied doing it because he would not want anyone to take his own life. The defendant stated during his testimony that he had also told his brother that he killed Cherry.

The butcher knife given to police by Carla Hutton was tested for possible traces of blood. Blood was found under the handle of the knife, but there was an insufficient amount to determine whether it was human or animal blood. The pathologist who conducted the autopsy testified that the dimensions of the butcher knife were consistent with the wound to the victim's neck and the knife could possibly have been the murder weapon.

The defense presented evidence raising doubts about the credibility of the State's witnesses, particularly the testimony of Dianne Benford, Carla Hutton and Troy Barnes. Two of the victim's co-workers testified that Cherry had not received any phone calls at work the day of the murder, nor had she mentioned having received any calls that day. The victim had talked about having received a call about her dog the evening before the murder. The defendant's sister, Cynthia Hutton, testified that

when the defendant and Troy Barnes were at her house the day of the murder she had not seen any cars in the street matching the description of the victim's car and had not asked the defendant about being in such a car. Ms. Hutton also testified that after the preliminary hearing Troy Barnes had admitted to her that he had lied about seeing the defendant in the victim's car. Evidence was presented that the defendant had not been on friendly terms with Troy Barnes, Carla Hutton or Dianne Benford, and that Troy Barnes and Carla Hutton were close friends.

Evidence was also presented of possible involvement by other persons in the murder. Terry McDaniel testified that he and two other men had burglarized the victim's home in October 1980. The defendant was not one of the participants in the burglary. At the time of the murder McDaniel's girlfriend lived at 2327 North Piatt which was five houses south of where the victim's car was found. McDaniel testified he occasionally stayed there but was not there the night of the murder. McDaniel testified that one of the other participants in the robbery, Michael Mannie, had taken the victim's dog because he thought the victim might offer a reward for the dog's return. In March 1981 Mannie returned the dog to police headquarters and admitted his involvement in the burglary, but denied killing Cherry. Mannie was known to have carried a hunting knife with a four-inch blade in the glove compartment of his car.

While in jail the defendant had asked McDaniel to write a letter for him stating that Michael Mannie had killed the victim. McDaniel had refused to state that Mannie had been involved in the killing, and instead wrote a letter stating the defendant had not been involved in the burglary.

A witness testified that on the day of the murder he had seen three black men hassling a white woman next to a car similar to the victim's, but the defendant was not one of the three men. Another witness testified that shortly after the murder he overheard three individuals discussing the murder which led him to believe they were involved in the killing. He contacted police shortly thereafter about the conversation. The defendant was not one of the three men involved in the conversation.

This court has stated the rules used to determine sufficiency of evidence on numerous occasions. As set forth fully in *State v.*

*Williams,* 229 Kan. 290, 296, 623 P.2d 1334, *reh. denied* 229 Kan. 646, 630 P.2d 694 (1981), the rules are as follows:

"A trial judge in passing on a motion for judgment of acquittal must determine whether upon the evidence, giving full play to the right of the jury to determine credibility, weigh the evidence, and draw justifiable inferences of fact therefrom, a reasonable mind, or rational trier of facts, might fairly conclude guilt beyond a reasonable doubt. *State v. Mack,* 228 Kan. 83, 89, 612 P.2d 158 (1980) and cases cited therein. In a criminal action where the defendant contends the evidence at trial was insufficient to sustain a conviction, the standard of review on appeal is: Does the evidence when viewed in the light most favorable to the prosecution convince the appellate court that a rational factfinder could have found the defendant guilty beyond a reasonable doubt? *State v. Peoples,* 227 Kan. 127, 133, 605 P.2d 135 (1980), and cases cited therein. In considering the sufficiency of evidence to sustain a conviction, this court looks only to the evidence in favor of the verdict, it does not weigh the evidence and if the essential elements of the charge are sustained by any competent evidence the conviction must stand. *State v. Peoples,* 227 Kan. at 133; *State v. Racey,* 225 Kan. 404, 407, 590 P.2d 1064 (1979). A conviction of even the gravest offenses may be sustained by circumstantial evidence. *State v. White & Stewart,* 225 Kan. 87, Syl. ¶ 14, 587 P.2d 1259 (1978)."

As stated by the United States Supreme Court in *Jackson v. Virginia,* 443 U.S. 307, 61 L.Ed.2d 560, 99 S.Ct. 2781, *reh. denied* 444 U.S. 890 (1979), the court is not to determine whether *it* believes the evidence establishes guilt beyond a reasonable doubt, but rather whether the court believes *any* rational trier of fact could have found guilt beyond a reasonable doubt. 443 U.S. at 318-19.

The fact that much of the evidence implicating the defendant in the murder was circumstantial does not render the evidence insufficient to support a verdict of guilt beyond a reasonable doubt. Although the credibility of the State's witnesses was brought into question and evidence was presented from which the jury could infer that someone other than the defendant had killed Mrs. Cherry, the jury obviously believed the State's witnesses and the theory advanced by the State rather than the evidence presented in the defendant's behalf. The evidence presented was sufficient for a rational trier of fact to have found the defendant guilty beyond a reasonable doubt.

The appellant contends that the evidence was insufficient as a matter of law to prove premeditation and malice, two essential elements of first-degree murder. The defendant maintains that the use of a sharp instrument alone was insufficient to prove malice, and that the State's evidence was insufficient to prove

premeditation and deliberation because the State's witnesses were not credible.

These points are without merit. Recently in *State v. Dargatz,* 228 Kan. 322, 333, 614 P.2d 430 (1980), we defined malice as follows:

"Malice as it relates to murder means knowledge of such circumstances that according to common experience there is a plain and strong likelihood that death will follow the contemplated act. *State v. Sparks,* 217 Kan. 204, 209, 535 P.2d 901 (1975). The existence of malice may be inferred from the circumstances attending the assault, such as the use of a deadly weapon, the character of the assault made, or an unprovoked or deliberately committed attack. *State v. Donahue,* 197 Kan. 317, 416 P.2d 287 (1966). In a prosecution for murder, the term maliciously has been defined as willfully doing a wrongful act without just cause or excuse. See PIK Crim. 56.04, Homicide Definitions."

The victim was struck in the neck with a sharp instrument which made a wound seven inches deep and approximately one inch wide, puncturing the victim's jugular vein and left lung. There were no apparent signs that a struggle had taken place. It was estimated that the victim had remained conscious for one minute after the fatal wound was inflicted and death had ensued within five minutes. Malice could readily have been inferred from these facts.

In *State v. Henson,* 221 Kan. 635, Syl. ¶ 1, 562 P.2d 51 (1977), proof of premeditation as an element of first-degree murder was considered. There it was stated:

"The element of premeditation, essential to first-degree murder, is not to be inferred from use of a deadly weapon alone, but if, in addition, other circumstances are shown, such as lack of provocation, the defendant's conduct before and after the killing or the dealing of lethal blows after the deceased was rendered helpless, the evidence may be sufficient to support an inference of deliberation and premeditation."

In *Henson* the court rejected an argument similar to the one advanced by the appellant, stating:

"The instant record discloses the use of a knife with a six inch blade, one inch in width—obviously a deadly weapon. The photographs introduced by the state show the stab wounds to be centered in and around the victim's heart, which indicates both deliberation and premeditation when considered with other evidence." 221 Kan. at 639-40.

The other evidence which was considered in *Henson* included lethal blows struck after the victim was rendered helpless, a prior civil wrong in which the defendant had used a knife in a similar manner, evidence that the defendant had looked for the victim the

night of the murder, and that the defendant had denied being in the victim's apartment until he learned he had left an identifiable palm print on the door.

The evidence presented in this case by the State inferred that the defendant called Mrs. Cherry and told her he had her dog so that she would meet him and bring the reward money with her. He armed himself with a butcher knife with an eight-inch blade, approximately one inch wide. There was no sign of a struggle, as neither the victim's hair, which was worn pulled back in a bun, nor her glasses were out of place. The defendant had been seen sitting in the car with the victim on Minnesota Street and the car had then been driven to North Piatt Street where the killing occurred. The defendant himself later said he killed the victim because she would not give him the money. The appellant cannot attack the credibility of the witnesses on appeal in an attempt to show that no evidence of premeditation was presented. It is the prerogative of the jury to determine the credibility of the witnesses, the weight to be given the evidence, and the reasonable inferences of fact which may be drawn from the evidence. *State v. Fenton,* 228 Kan. 658, 666, 620 P.2d 813 (1980). Ample evidence was presented from which a reasonable inference of premeditation could be drawn.

The defendant next contends the trial court erred in failing to instruct the jury on lesser included offenses as required by K.S.A. 21-3107(3). Instructions were given on the crimes of aggravated robbery, felony murder and first-degree murder. At trial defense counsel affirmatively agreed with the trial court that no instructions on lesser included offenses were warranted under the facts of this case.

The district court has an affirmative duty under K.S.A. 21-3107(3) to instruct on lesser included offenses even in the absence of a request. However, this duty arises only where there is evidence under which the defendant might reasonably have been convicted of the lesser offense. See, *e.g., State v. Reynolds,* 230 Kan. 532, 538, 639 P.2d 461 (1982); *State v. Cameron & Bentley,* 216 Kan. 644, 651, 533 P.2d 1255 (1975).

The appellant does not specify what instructions should have been given but refers to case law indicating that in a murder prosecution instructions on all degrees of homicide should be given.

The appellant contends that, because there was conflicting evidence as to whether or not the underlying robbery was committed and the evidence against the defendant was totally circumstantial, the court had a duty to instruct on lesser degrees of homicide. See *State v. Johnson,* 220 Kan. 720, 724, 556 P.2d 168 (1976); *State v. Bradford,* 219 Kan. 336, 343, 548 P.2d 812 (1976). We disagree. Initially it should be noted that premeditated murder and felony murder are not separate offenses, but merely supply alternative methods of proving deliberation and premeditation required for a conviction of first-degree murder under K.S.A. 21-3401. *State v. McCowan,* 226 Kan. 752, 759, 602 P.2d 1363 (1979). Under the felony-murder rule the elements of premeditation and deliberation are supplied by the evidence of the felony being committed, thus relieving the State of the burden of separately proving them. *State v. McCowan,* 226 Kan. at 759; *State v. Bradford,* 219 Kan. at 343. For lesser included instructions to be required in a prosecution for felony murder, first there must be conflicting evidence that the underlying felony was committed, and second the evidence must support a conviction on the lesser crime. *State v. Bradford,* 219 Kan. at 343. See also *State v. Case,* 228 Kan. 733, 739, 620 P.2d 821 (1980); *State v. Marks,* 226 Kan. 704, 713, 602 P.2d 1344 (1979); *State v. Foy,* 224 Kan. 558, 567-68, 582 P.2d 281 (1978). For instructions on lesser included offenses to be required in a charge of premeditated murder it is only necessary for evidence to exist to support a conviction of the lesser offense.

*The defendant relied on an alibi defense,* testifying that he was doing other things the day of the murder. In addition, testimony was presented by the defense inferring that persons other than the defendant, namely the participants in the earlier robbery of the victim's home, were responsible for the murder. The only conflicting testimony concerning the underlying robbery was not affirmatively presented by the defense, but rather was elicited on cross-examination of a police officer testifying for the prosecution. The officer was asked whether he had seen anything in the car other than the victim's body and he replied that her purse was in the car. On redirect examination the officer testified that his report of the murder did not indicate that a purse was in the car and after being shown a picture taken shortly after the victim was found showing her body in the front seat of the car, the officer

admitted that what he had thought was a purse could actually have been something else lying next to the victim. Another police officer testified that he had not seen a purse in the car, nor had one been found. Because of that, a purse had been specifically listed on a search warrant issued for a search of the victim's car after the body had been removed.

We have concluded that the evidence presented was not sufficient to require instructions on lesser included offenses on either the felony murder or premeditated murder charges. A similar situation was involved in *State v. Marks*, 226 Kan. at 713. There the appellant maintained lesser included instructions for felony murder were required based on conflicting testimony by the appellant and the alleged coconspirator concerning how the murder had occurred. The defendant testified he was not present when the victim was shot, nor had he been a party to a prior conspiracy to commit the robbery. The alleged coconspirator testified that he and the defendant had entered a store with the intent to commit the robbery and the defendant had actually shot the victim. No testimony was presented by any witnesses supporting the conclusion that the defendant was guilty of either voluntary or involuntary manslaughter. The court held that under the evidence presented the jury could either have found the defendant guilty as the actual perpetrator or as an aider and abettor, or the defendant was not present and had not been involved in any conspiracy to rob the store. There was no evidence to support a conviction of a lesser degree of homicide. The court went on to state:

"In order for the evidence to be sufficient to require instructions on lesser degrees of the homicide, the testimony supporting such instructions must be offered either by the State or by the defense for the purpose of proving what events occurred at the time the homicide was committed. Contradictory statements of a witness which are offered only for the purpose of destroying his credibility and not as positive evidence to prove the matters contained in the statements are not alone sufficient to require an instruction on the lesser degrees of homicide. In all of the cases where we have required instructions on the lesser degrees of homicide in a felony-murder case, there has been positive testimony of either the defendant or another witness offered for the express purpose of proving a particular version of how the homicide occurred." 226 Kan. at 714.

Other than the aforementioned cross-examination of the police officer concerning the victim's purse, no evidence was presented to refute the State's theory of premeditated or felony murder. No

positive testimony was offered by the defendant or any other witness to show that the homicide occurred any differently than the way in which the State presented it or to support a conviction of a lesser degree of homicide. Instead, the defendant relied upon an alibi defense and presented evidence in an attempt to infer that the men who previously burglarized the victim's home had been involved in the killing. Both these lines of defense narrowed the issue at trial to identity of the murderer. This court has previously considered the need for instructions on lesser included offenses where an alibi defense is raised. See *State v. Reynolds,* 230 Kan. at 538; *State v. Cameron & Bentley,* 216 Kan. 651. These cases recognize that an alibi defense does not refute the evidence establishing the elements of the crime charged and is insufficient, standing alone, to support a verdict on a lesser charge. An alibi defense does not dispute the evidence that the crime charged was committed in the manner alleged; rather, it merely challenges the identity of the perpetrator. As clearly pointed out in *State v. Marks,* there must be *positive testimony* presented for the express purpose of proving a version of how the homicide occurred which is contrary to the version presented by the State before instructions on lesser included offenses are required.

Under the facts of this case the defendant was guilty of either first-degree premeditated murder or felony murder, or he was not present and was not guilty of anything. The jury found that the defendant killed Mrs. Cherry with premeditation and deliberation and was guilty of first-degree premeditated murder. A verdict of guilty on any lesser included offense, *i.e.,* second-degree murder or voluntary manslaughter, would not have been supported by the evidence.

In his final point on appeal the appellant contends the bill of particulars furnished to him by the prosecution was insufficient and misleading. The bill of particulars stated that the crime occurred between the hours of 2:30 p.m. and 8:00 p.m. on January 29, 1981. At trial the evidence established that the crime occurred before 5:00 p.m., as an eleven-year-old boy had seen the body in the car when he returned home from school between 4:30 and 5:00 p.m. The appellant claims that by not receiving a more definite time he was prevented from effectively preparing his alibi defense.

As discussed in *State v. Craven,* 215 Kan. 546, 549-50, 527 P.2d

1003 (1974), the purpose of a bill of particulars is to require the State to furnish more specific information concerning the nature of the charge. It is nothing more than a statement of facts which describes the offense set forth in the complaint, information or indictment, and its function is to state more minutely and particularly the charge against the defendant so that the defendant is able to prepare his defense and avoid surprise. The crucial point to consider where there are discrepancies in the date of an offense charged is whether or not the defendant was misled or prejudiced in making his defense. *State v. Sisson,* 217 Kan. 475, 478-79, 536 P.2d 1369 (1975); *State v. Jones,* 204 Kan. 719, 725-26, 466 P.2d 283 (1970). In *Jones,* the offense was alleged to have occurred sometime over a seven-day period. The defendant alleged that the exact date of the offense was available and ascertainable from the victim's testimony prior to trial and he was prevented from establishing an adequate alibi defense by the prosecution's failure to indicate a stated time for the offense. The court held that the defendant was not prejudiced in preparing his defense where he was fully represented by counsel and had over five months to prepare a defense to the allegation that the crime occurred within the seven-day period.

The defendant does not indicate how the preparation of his alibi defense was prejudiced by the State's failure to specify that the murder occurred between 2:30 and 5:00 p.m., rather than between 2:30 and 8:00 p.m. At trial the appellant testified as to his whereabouts from the time he left his home around 2:00 or 2:30 in the afternoon until the time he returned home that evening between 7:00 and 8:00 p.m. No other witnesses testified to corroborate the defendant's whereabouts at any particular time. Although apparently the prosecution had evidence prior to trial establishing a more specific time when the murder took place which may have been helpful in the preparation of the defendant's alibi, we cannot say under the circumstances that the appellant was prejudiced by the extended time frame given.

The judgment of the lower court is affirmed.