No. 71,108

STATE OF KANSAS, *Appellee*, v. DEON LEWIS, *Appellant*.

(889 P.2d 766)

Opinion filed January 27, 1995.

*Rick Kittel*, assistant appellate defender, argued the cause, and *Jessica R. Kunen*, chief appellate defender, was with him on the brief for appellant.

*Michael Grosko*, assistant district attorney, argued the cause, and *Nick A. Tomasic*, district attorney, and *Robert T. Stephan*, attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

ALLEGRUCCI, J.: Deon Lewis appeals his convictions and sentences. Lewis was convicted by a jury of one count of aggravated kidnapping, seven counts of kidnapping, nine counts of aggravated robbery, and three counts of aggravated burglary. He was sentenced to life imprisonment for aggravated kidnapping, 10 years to life for each count of kidnapping and aggravated robbery, and 5 to 20 years for each count of aggravated burglary. The sentence for each kidnapping count runs concurrent with the sentence for the corresponding count of aggravated robbery; the sentences for the aggravated robbery counts run consecutive to one another and consecutive to the sentence for aggravated kidnapping; and the sentences for the aggravated burglary counts run concurrent with

the kidnapping/aggravated robbery sentences. The controlling term is life plus 90 years' imprisonment.

Lewis raises three issues on appeal. He first argues that the district court should have instructed the jury on obtaining control over stolen property as a lesser included offense of aggravated robbery. He next argues that the district court should have instructed the jury on unlawful restraint as a lesser included offense of kidnapping and aggravated kidnapping. His final claim of error is that the district court abused its discretion in sentencing.

Deon Lewis was convicted of participating in four separate armed robberies in Kansas City, Kansas, during the evening and early morning hours of January 3-4, 1993. At approximately 6:45 in the evening of January 3, while Sidney Green was waiting in the drive-through line at a fast-food restaurant, two men, one with a handgun, got into the car with him. Following orders, Green pulled out of the line and drove a short distance to an area behind a store where there were no other cars around. The two men took Green's wallet, ordered him to get out of the car, and drove away. Green identified Lewis as the man who got in the back seat.

At approximately 11:00 p.m. on January 3, Tracy Lacy, her husband, Patrick Bracken, and his brother, Dennis Bracken, were watching television in the living room of Tracy and Patrick's apartment. Their two-month-old son was sleeping in the bedroom. A man with a gun, later identified as Lewis, pushed open the front door and ordered the occupants to lie face down on the floor. Several more men entered the apartment, the occupants were threatened, and couch cushions were put over their heads. Lacy's rings were removed, she was bound, and a sock was put in her mouth. At gunpoint, Dennis Bracken was taken by Lewis into another room to get his wallet and then returned to the living room floor. He was bound and a sock was put into his mouth. Patrick Bracken's cash and wallet were removed from his pocket, he was bound, and a sock was put in his mouth. VCR equipment and tapes, stereo equipment, a radio, a telephone/answering machine, and other jewelry also were taken.

At about 11:40 p.m. of the same day, when Edward Freeman pulled his car into his garage and got out, he was confronted by

a man with a gun. He told Freeman to turn and put both hands on the car. He took the wallet from Freeman's pocket and a ring from his hand. A second man took a ring off Freeman's other hand. Freeman later identified Lewis as the gunman.

Sometime between midnight and 1:00 a.m. on January 4, Tim and Shannon Pierce were at home playing a word game with Tim's sister, Brandi, and their neighbor, Steve Sterner. A man with a gun entered through the front door, and he was followed by two others. The occupants were told to get down on the floor, and coats from the coat rack were thrown over them. Brandi was pulled back up and taken into another room where the gunman took her rings off her hands. She was bound and a sock was put in her mouth. Tim was bound, a sock was put in his mouth, and his cash, wedding ring, and watch were taken off him; he was kicked in the back and knocked unconscious by three blows with the butt of a gun on the back of his head. Shannon was bound. Sterner's wallet was taken out of his pocket while he was lying on the floor in the living room. When he was moved into a bedroom, his watch was taken, he was bound lying face down on the bed, and a sock was put in his mouth. The mattress with Sterner on it was put on the floor, and the covers were thrown over him. Lewis was later identified by the victims as the gunman. Items taken from the Pierces' home included telephones, VCR's, a CD player and CD's, a shotgun, and jewelry.

At roll call before his patrol shift began at 9:30 p.m. on January 3, Officer Rasnik received information about a carjacking at a fast-food restaurant. At about 2:45 the next morning, he spotted the stolen vehicle sitting in front of a known drug house. The officer confirmed with the dispatcher that it was the stolen car and requested backup units. Officers went into the house through the back door. An elderly man opened the door. Three men and a woman were sitting in one room, and two men, including Lewis, were sitting in another room. When Lewis got out of his chair to lie on the floor as ordered, a revolver was revealed on the seat of the chair. In the area around the chair, police found jewelry, wallets, and watches. The other man in the room, Dale Smith, testified that when someone warned that police were coming in,

"I woke up and I seen this guy, he was dumping stuff out of his pockets and what not and then pulled out a revolver and stuck it in the chair and sat on it."

Lewis presented testimony of his girlfriend and aunt that placed him away from the robberies. He testified that he bought the stolen items from a friend.

Vanessa Powell, Lewis' girlfriend, testified that she and Lewis were at his mother's house from about 5:00 until about 8:00 the evening of January 3. At approximately 8:00 p.m., Deborah Duren, Lewis' aunt, drove them to her house, where they talked and ate and played cards. At about 12:30 or 1:00 a.m., Powell and Lewis went to her house. Between 1:00 and 1:30 a.m., Lewis left with Terrance Poindexter.

Duren testified that she picked up Powell and Lewis at about 8:00 p.m. at Powell's house. They went to a "get-together" at Duren's house, where there were quite a few people playing cards, eating, and shooting dice. At about 12:45 a.m., Duren drove Powell and Lewis back to Powell's house.

Lewis testified that he and Powell had been at his mother's house about three hours when Duren picked them up and drove them to her house. At 12:30 a.m., Duren drove Powell and Lewis to Powell's house. After about 15 minutes, he left with Terrance Poindexter. They drove to and from Leavenworth, and during the trip Lewis bought some jewelry from Poindexter for $280. About 2:25 a.m. they went to a house where Lewis bought more jewelry, which he put in his pocket. The police came and took him into custody. Poindexter was shot and killed before the trial.

Lewis first argues that the district court erred in failing to instruct the jury on theft pursuant to K.S.A. 21-3701(d): "Obtaining control over stolen property knowing the property to have been stolen by another." He contends that this form of theft is a lesser included offense of aggravated robbery and that the evidence supported giving the instruction.

K.S.A. 21-3107(3) requires the "trial court to instruct the jury, not only as to the crime charged but as to all lesser crimes of which the accused might be found guilty . . . upon the evidence

adduced." K.S.A. 21-3107(2) defines "included crime" as any of the following:

"(a) A lesser degree of the same crime;
(b) an attempt to commit the crime charged;
(c) an attempt to commit a lesser degree of the crime charged; or
(d) a crime necessarily proved if the crime charged were proved."

Lewis contends that obtaining control over stolen property is a lesser degree of aggravated robbery. See K.S.A. 21-3107(2)(a).

"Aggravated robbery is a robbery committed by a person who is armed with a dangerous weapon or who inflicts bodily harm upon any person in the course of such robbery." K.S.A. 21-3427. "Robbery is the taking of property from the person or presence of another by threat of bodily harm to his person or the person of another or by force." K.S.A. 21-3426. Theft is defined as

"any of the following acts done with intent to deprive the owner permanently of the possession, use or benefit of the owner's property:
(a) Obtaining or exerting unauthorized control over property; or
(b) obtaining by deception control over property; or
(c) obtaining by threat control over property; or
(d) obtaining control over stolen property knowing the property to have been stolen by another." K.S.A. 21-3701.

Where there is evidence upon which a conviction of a lesser included offense could be based, the district court has an affirmative duty to instruct the jury on an appropriate lesser included offense even if, as here, the defendant did not request the instruction. *State v. Evans*, 251 Kan. 132, 138, 834 P.2d 335 (1992). The evidence must be viewed in the light most favorable to the defendant and it may be inconclusive, unsatisfactory, and weak. *State v. Dixon*, 252 Kan. 39, Syl. ¶ 1, 843 P.2d 182 (1992). The instruction need not be given, however, if the evidence would not permit a rational factfinder to find the defendant guilty beyond a reasonable doubt of the lesser included offense. See *State v. Deavers*, 252 Kan. 149, 151, 843 P.2d 695 (1992), *cert. denied* 125 L. Ed. 2d 676 (1993).

In *State v. Bandt*, 219 Kan. 816, 819, 549 P.2d 936 (1976), the court stated with regard to the offense of obtaining control over stolen property:

"The offense defined in 21-3701(d) simply requires proof by the state that the defendant at the time he received stolen property had a belief or a reasonable suspicion from all the circumstances known to him that the property was stolen and that the act was done with intent to deprive the owner permanently of the possession, use or benefit of his property."

In *State v. Hutton*, 232 Kan. 545, 657 P.2d 567 (1983), the defendant was charged with first-degree murder. Hutton argued that the court had a duty to instruct on lesser degrees of homicide. As in the present case, the defendant relied on alibi as a defense. Further, the defendant implied that other persons had committed the murder. The court concluded that the evidence was insufficient to require a lesser included offenses instruction, stating:

"This court has previously considered the need for instructions on lesser included offenses where an alibi defense is raised. See *State v. Reynolds*, 230 Kan. at 538; *State v. Cameron & Bentley*, 216 Kan. 651. These cases recognize that an alibi defense does not refute the evidence establishing the elements of the crime charged and is insufficient, standing alone, to support a verdict on a lesser charge. An alibi defense does not dispute the evidence that the crime charged was committed in the manner alleged; rather, it merely challenges the identity of the perpetrator. As clearly pointed out in *State v. Marks*, [226 Kan. 704] there must be *positive testimony* presented for the express purpose of proving a version of how the homicide occurred which is contrary to the version presented by the State before instructions on lesser included offenses are required.

"Under the facts of this case the defendant was guilty of either first-degree premeditated murder or felony murder, or he was not present and was not guilty of anything. The jury found that the defendant killed Mrs. Cherry with premeditation and deliberation and was guilty of first-degree premeditated murder. A verdict of guilty on any lesser included offense, *i.e.*, second-degree murder or voluntary manslaughter, would not have been supported by the evidence." 232 Kan. at 555.

In *State v. Long*, 234 Kan. 580, 675 P.2d 832 (1984), the defendant appealed his conviction of robbery, contending that the trial court erred in not instructing on theft as a lesser included offense. The court agreed that under K.S.A. 21-3107(2)(a) the crime of theft is an included crime of robbery as a "lesser degree of the same crime." 234 Kan. at 591-92. However, citing *Hutton*, the court concluded the defendant was not entitled to a lesser included instruction because there was not evidence upon which the defendant might reasonably be convicted of the lesser offense. The court reasoned:

"In this case the appellant denied taking the money at all, although he admitted he 'brushed by' Mrs. Wolf when he panicked and ran from the sale building. Based upon the evidence presented, the jury could either find the appellant did not take the money, in which event he would not be guilty of anything, or that he did take the money from the money box and used force to accomplish the taking, in which event he would be guilty as charged. This is not a situation where the defendant denies using force or threat of bodily harm to accomplish the taking. He denies that the money was actually taken by him. The appellant's defense in this case was to challenge the identity of the perpetrator. The court has recognized in cases involving alibi defenses such a defense is insufficient, standing alone, to support an instruction on a lesser charge, where it does not refute the evidence establishing the elements of the crime. See *State v. Hutton*, 232 Kan. at 554-55; *State v. Cameron & Bentley*, 216 Kan. 644, 651, 533 P.2d 1255 (1975). No evidence was presented by the appellant upon his theory of defense which would reasonably have supported his conviction of the lesser crime of theft, and therefore the trial court did not err in failing to instruct the jury on the crime of theft." 234 Kan. at 593.

In the present case, the defense evidence was that Lewis was with his girlfriend and family members rather than participating in the robberies, but that later he bought items which had been taken by others in the robberies. Lewis contends that a reasonable jury might have convicted him of theft, as defined in K.S.A. 21-3701(d), based on this evidence. *Hutton* and *Long* hold to the contrary. The evidence presented by Lewis challenges the identity of the robber but does not refute the State's evidence that the aggravated robbery was committed as alleged. As such, the evidence is insufficient to support an instruction on the lesser charge of receiving stolen property. An alibi defense, in and of itself, is not sufficient to support an instruction on a lesser charge. Based upon the evidence, Lewis was either guilty of aggravated robbery or he was not there and therefore not guilty of aggravated robbery. The district court did not err in failing to instruct the jury on receiving stolen property.

Lewis next contends that the district court should have instructed the jury on unlawful restraint as a lesser included offense of aggravated kidnapping and kidnapping. K.S.A. 21-3424(a) provides: "Unlawful restraint is knowingly and without legal authority restraining another so as to interfere substantially with his liberty." "Kidnapping is the taking or confining of any person, accom-

plished by force, threat or deception, with the intent to hold such person . . . [t]o facilitate flight or the commission of any crime." K.S.A. 21-3420(b). "Aggravated kidnapping is kidnapping . . . when bodily harm is inflicted upon the person kidnapped." K.S.A. 21-3421.

Here, as discussed in the preceding issue, an alibi defense is insufficient to support an instruction on a lesser included offense. Lewis' evidence was that he did not participate in the robberies and that he later bought jewelry taken in the robberies from Poindexter. His own defense theory precluded conviction of unlawful restraint. If the jury had believed his account of the events, it necessarily would have found he was not there and not guilty as charged. Because the district court's duty to instruct on a lesser included offense is triggered only where there is evidence upon which the defendant might reasonably be convicted of the lesser offense, there was no error in the district court's not instructing the jury on unlawful restraint.

Finally, Lewis contends that the district court abused its discretion in sentencing. The district court initially sentenced Lewis to a controlling term of 160 years consecutive to life imprisonment. On Lewis' motion for modification, the district court reduced the controlling term to 90 years consecutive to life imprisonment. On appeal, Lewis complains that the sentencing judge "did not adequately consider the individual characteristics, circumstances, needs, and potentialities as they applied to Mr. Lewis (see K.S.A. 21-4601) nor the factors found in K.S.A. 21-4606." He compares the circumstances in his case with those in *State v. Richard*, 252 Kan. 872, 850 P.2d 844 (1993).

In *Richard*, the court stated that the sentencing judge's failing to place on the record a detailed statement of considered facts and factors "does not always indicate the sentencing court abused its discretion. Each case is to be considered on its facts." 252 Kan. at 881. In addition, "[a] sentencing court may be found to have substantially complied with K.S.A. 21-4606 when it incorporates into the record a presentence report which addresses the seven factors which must be considered pursuant to K.S.A. 21-4606(2)." 252 Kan. at 881.

In the present case, the sentencing judge commented at length on the reasons why he was imposing the announced sentences. He stated that the aggravated kidnapping conviction carried a mandatory life sentence. He stated that "a gun was involved and that the gun statute applies as far as probation not being applicable in the commission of all these particular crimes." He stated that he had read the presentence report and the "addendum which sets forth the sentences that may apply under the new guidelines," and he solicited a stipulation from the parties that the sentencing guidelines do not control. He listened to the statements of counsel and one of the victims. He stated that the sentences for aggravated robbery would be greater than the minimum due to Lewis' "past criminal record of four convictions, two incarcerations being to no avail and his criminal behavior and conduct towards society." He also referred to the "atrociousness involved" and "this antisocial behavior." With regard to the sentences for kidnapping, the sentencing judge stated:

"[H]e is given double the minimum because of his prior criminal history. And . . . the reason he is not receiving any minimum sentence on all—on the ones where I don't apply the minimum is because of the particular nature of this crime and how it occurred wherever one or almost all of these victims were in their private home minding their own business where they should be allowed to privacy and sanctity of that particular region were invaded by these gentlemen, among whom was the defendant . . . . He came in there unannounced, terrified and horrified these people in a nature that I haven't seen."

When announcing the sentences for aggravated burglary, the court explained that, in general, sentences for offenses which could be said to have been committed in an unbroken act would run concurrently while sentences for discrete acts would run consecutively.

The presentence investigation (PSI) report does not expressly address the K.S.A. 21-4606 criteria, but significant information bearing on the statutory factors is included in the report. Lewis' criminal record includes burglary, felony theft, a firearm violation, and attempted robbery. See K.S.A. 21-4606(2)(a). Victim impact questionnaires were attached to the PSI report. The PSI report states each of the 20 charges of which Lewis was found guilty. His intent to cause or threaten serious harm reasonably may be

inferred from the facts alleged in the charges and accepted as true by the jury. Those facts included his being armed with a dangerous weapon, threatening bodily harm, entering residences without permission in which there were people, and inflicting bodily harm on Tim Pierce. K.S.A. 21-4606(2)(c). The lack of provocation reasonably can be inferred from the charges listed in the PSI report as well as the official version and the defendant's version given there. See K.S.A. 21-4606(2)(d). Defendant's version and the personal history indicate that there were no substantial grounds tending to excuse the criminal conduct. See K.S.A. 21-4606(2)(e). The lack of victim inducement or facilitation reasonably can be inferred from the charges listed in the PSI report as well as the official version and the defendant's version given there. See K.S.A. 21-4606(2)(f). The lack of defendant's compensating the victims reasonably may be inferred from their statements. See K.S.A. 21-4606(2)(g).

Lewis' argument on appeal relies heavily on the proposition that the sentencing court should have considered personal information about him which is contained in his Topeka Correctional Facility (TCF) evaluation report. That information was not available at the time of sentencing, but it was considered by the court later when the sentences were modified. Sentencing occurred on August 20, 1993. The TCF report is dated September 30, 1993. On November 4, 1993, a hearing was conducted in which Lewis' counsel requested modification of the sentences based on information in the TCF report. Lewis' counsel underscored the TCF contents which might tend to excuse or minimize the criminal conduct. The court then modified the sentences so that the kidnapping and aggravated robbery terms would run concurrently. The district court did not abuse its discretion in sentencing Lewis.

The judgment of the district court is affirmed.