NOT DESIGNATED FOR PUBLICATION

No. 113,867

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

MANDY L. HURD,
*Appellant*.


MEMORANDUM OPINION


Appeal from Douglas District Court; ROBERT W. FAIRCHILD, judge. Opinion filed June 3, 2016. Affirmed.


*Lorraine Hilleary*, of Lawrence, for appellant.


*Patrick J. Hurley*, assistant district attorney, *Charles E. Branson*, district attorney, and *Derek Schmidt*, attorney general, for appellee.


Before MALONE, C.J., BUSER and BRUNS, JJ.


*Per Curiam*:  Mandy L. Hurd appeals her conviction for one count of misdemeanor theft. Although Hurd contends that there was insufficient evidence to show she knew that the property she received was stolen, we find that there was adequate evidence that would allow a reasonable finder of fact to conclude that Mandy had at least a reasonable suspicion that the property was stolen at the time she received it. We agree with Hurd that the State laid an inadequate foundation to admit some of the exhibits admitted at trial. However, we find this to be harmless error under the circumstances presented. Thus, we affirm.

1

On February 25, 2015, the State charged Mandy Hurd with theft by obtaining or exerting unauthorized control over property—or in the alternative—theft by obtaining control over stolen property valued less than $1,000, a class A nonperson misdemeanor. See K.S.A. 2013 Supp. 21-5801(a)(1), (a)(4), (b)(4). Several months later, the district court conducted a bench trial, during which the State called Mandy's father-in-law, Timothy Hurd; Mandy's husband, Blake Hurd; as well as Detective Chris Thomas and Deputy Jennifer Carlson of the Douglas County Sheriff's Office to testify. Mandy exercised her right not to testify, and the defense did not call any witnesses.

Timothy testified that he had been employed by the University of Kansas Athletic Department for nearly 30 years. As an employee of the Athletic Department, Timothy was presented with a 2008 University of Kansas Men's Basketball NCAA National Championship ring and a 2008 University of Kansas Football Orange Bowl Championship ring. The name, "Timothy P. Hurd" was engraved on the inside band of both rings. According to Timothy, he kept the rings in a dresser drawer in his bedroom.

Blake and Mandy were living with Timothy in December 2013 and January 2014. He testified that Blake and Mandy did not have permission to go into his bedroom. Moreover, he kept the door to his bedroom locked. On January 31, 2014, Timothy was contacted by someone in Kansas City who wanted to know whether the basketball championship ring was stolen before he purchased it from a third party. In checking the dresser drawer in his bedroom, Timothy found that both of the championship rings were missing.

Timothy called Blake and Mandy to ask if they knew anything about the missing championship rings. After they both denied knowledge of the missing rings, Timothy contacted law enforcement and reported them as stolen. Although the actual value of the

rings cannot be determined from the record on appeal, Timothy estimated the value of each ring to be approximately $500.

Timothy eventually received the Orange Bowl championship ring back from the Kansas City, Missouri, Police Department after officers recovered it during a drug raid. At the time of trial, Law enforcement had also recovered the NCAA basketball championship ring but had not returned it to Timothy.

Blake testified that sometime in December 2013, or January 2014, he picked the lock to his father's bedroom door when Timothy was not at home. According to Blake, he initially searched for cigarettes but decided to take the championship rings when he found them in the back of a dresser drawer. Blake testified that Mandy was in the house at the time the championship rings were stolen and that she was aware of what he was doing.

In addition, Blake testified that he showed the rings to Mandy, told her that he took them from his father's bedroom, and the two of them agreed to sell the rings for methamphetamine. Blake further testified that it was Mandy who contacted a drug dealer she knew in Wyandotte County nicknamed "Tino"—who police later identified as Ian Wolverton—to arrange the sale of the championship rings for methamphetamine. Blake also testified that Mandy used her cell phone to take and send pictures of the rings to Wolverton.

Blake recounted that a few days later, Mandy drove the two of them in her vehicle to Oak Park Mall in Kansas City where they met Wolverton. According to Blake, he and Mandy sold the Orange Bowl championship ring for 3.5 grams of methamphetamine. Blake testified that both he and Mandy used the drugs over the course of the next few days. When the couple ran out of drugs, the two returned to Kansas City and sold Wolverton the NCAA basketball championship ring for 7 grams of methamphetamine. Blake testified that he, Mandy, Wolverton, and a person nicknamed "Lunchmeat"—later

3

identified as Daniel Slabotsky—all smoked the methamphetamine together. Blake later told a law enforcement officer that he told Mandy he wanted to return the basketball championship ring to his father's dresser drawer after selling the football ring but that she had convinced him not to do so because she wanted the methamphetamine.

Deputy Carlson testified that she drove to Timothy's house to take a stolen property report on January 31, 2014. While at Timothy's house, Deputy Carlson also spoke with Mandy, who claimed that Blake had told her that his father had given him the rings. According to Deputy Carlson, Mandy also told her that she knew that Blake used "a butter knife" to get into Timothy's bedroom when he was gone.

Detective Thomas testified that he interviewed Mandy at her mother's home on March 25, 2014. During the interview, Mandy told him that she went with Blake to Kansas City to sell the championship rings. However, she continued to claim that she thought the rings were a gift to Blake from his father. Mandy also claimed that Blake coordinated the trade of the championship rings for methamphetamine and that the drugs were for him.

According to Detective Thomas, when he pointed out that Blake's father was not at home to give him the rings at the time he obtained them, Mandy responded that Timothy should have put a dead bolt on his bedroom door. Although she admitted to Detective Thomas that she knew Wolverton through a friend, she denied that he was her drug dealer. She claimed that she had Wolverton's phone number at one time but that she had since deleted the number from her cell phone. After Mandy refused to voluntarily consent to a search of her cell phone, Detective Thomas obtained a search warrant and took possession of the phone. It was not until after Detective Thomas obtained the search warrant when Mandy admitted that Wolverton's phone number was in her phone.

4

Detective Thomas stated that he could look at the contents of the phone and that he eventually took the cell phone to "ITC" "on the west end of town" where they could download the information from the cell phone to a disk. Although Detective Thomas did not expand on what "ITC" was during trial, an affidavit attached to the complaint states that the "phone was imaged by Lawrence Police Detective Greg Pruett." Detective Thomas explained that ITC makes an image of the phone and then breaks down the information into different categories. The exhibits admitted at trial represented the reports generated from these categories of information. When describing the information from Hurd's cell phone, Detective Thomas clarified, "When I say I examined her phone, I viewed the disk, which is a copy of her phone data."

During the bench trial, five exhibits offered by the State were admitted into evidence. Exhibit 1 was Mandy's initialed *Miranda* rights advisory form, and its admission is not an issue in this appeal. Exhibit 2 was a report showing photographs and related information downloaded from Mandy's cell phone, including the date that each photograph was taken. Several of the photographs depicted the University of Kansas championship rings. Initially, Mandy's attorney stated that she had no objection, and the district court admitted Exhibit 2 into evidence. Later, however, Mandy's attorney asserted an objection to Exhibit 2, claiming that the State had not laid an adequate foundation for its admission.

Exhibit 3, which was admitted into evidence without objection and is not at issue in this appeal, includes four close-up photos of Timothy's 2008 NCAA National Basketball Championship ring. On the side of the ring, the name "HURD" was engraved. Moreover, three of the photos show that the ring is being held by someone wearing fingernail polish. Blake testified at trial that it is Mandy's hand depicted in the photos holding the basketball championship ring.

5

Exhibits 4 and 5—to which Mandy objected at the time they were offered for a lack of foundation—are a list of calls and text messages downloaded from Mandy's cell phone. Specifically, Exhibit 4 itemized outgoing and incoming calls, including those to and from Wolverton. The call log represented in Exhibit 4 was limited to calls placed or received between February 5, 2014, and March 23, 2014. Moreover, Exhibit 5 shows that there had been 36 "phone events" involving Wolverton's number during that time period.

At the conclusion of the evidence, the State withdrew the alternative count of theft by obtaining or exerting unauthorized control over property, and the district court found Mandy guilty of misdemeanor theft. The district court sentenced Mandy to serve 12 months' supervised probation and imposed an underlying 12-month sentence. In finding Mandy to be guilty, the district court explained that it found Blake's version of the events to be more persuasive. It also explained that

> "[a]t the time that—I don't think she did know at the time, initially, that he was stealing the rings. I think that's—there is no dispute in testimony to that, but the problem is that if after the fact she asserts control over those and participates in their sale which she did—in fact, [Blake] said he was gonna [*sic*] back out because he was feeling guilty, and she said, no, we need the—to sell these and get meth.

> "So, you know, I think there is more than enough evidence for the Court to find beyond a reasonable doubt that the defendant is guilty of the second alternative which would—we used to call receiving stolen property, but it's all under theft."

Mandy thereafter filed a timely notice of appeal.

ANALYSIS

*Sufficiency of Evidence*

On appeal, Mandy challenges the sufficiency of the evidence supporting her conviction. When a criminal defendant challenges the sufficiency of the evidence, we review all of the evidence in the light most favorable to the prosecution and are to uphold a conviction if we are convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt based on that evidence. As a general rule, we will not reweigh the evidence or the credibility of witnesses. *State v. Williams*, 299 Kan. 509, 525, 324 P.3d 1078 (2014). It is only in rare cases when the testimony is so incredible that no reasonable fact finder could find guilt beyond a reasonable doubt that a guilty verdict will be reversed. See *State v. Matlock*, 233 Kan. 1, 5-6, 660 P.2d 945 (1983).

Here, Mandy was convicted by the district court of misdemeanor theft. K.S.A. 2013 Supp. 21-5801(a)(4) provides that a defendant commits theft by "obtaining control over stolen property or services knowing the property or services to have been stolen by another" with the "intent to permanently deprive the owner of the possession, use or benefit of the owner's property or services." In order to prove that a defendant is guilty of obtaining control over stolen property, the State must prove that at the time the defendant received the stolen property, he or she "'had a belief or a *reasonable suspicion from all the circumstances known to him* that the property was stolen and that the act was done with intent to deprive the owner permanently of the possession, use or benefit of his property.'" (Emphasis added.) *State v. Lewis*, 256 Kan. 929, 933-34, 889 P.2d 766 (1995) (quoting *State v. Bandt*, 219 Kan. 816, 819, 549 P.2d 936 [1976]); see also *State v. Holt*, No. 106,711, 2013 WL 517657, at *7-9 (Kan. App.) (unpublished opinion), *rev. denied* 297 Kan. 1251 (2013) (finding that *Bandt* and other Kansas Supreme Court cases stating this rule were still good law); PIK Crim. 4th 58.020 (2013 Supp.).

Mandy argues that the State did not present enough evidence at trial to indicate that she knew the championship rings were stolen or that she intended to permanently deprive her father-in-law of the rings. Instead, Mandy claims that she was merely associated with Blake who was the principal in the theft. In support of her position, she cites *State v. Green*, 237 Kan. 146, 697 P.2d 1305 (1985), in which a defendant was charged with theft as an aider and abettor for driving a getaway car. In *Green*, the Kansas Supreme Court affirmed the dismissal of the criminal complaint because the State's own witnesses testified that the defendant wanted nothing to do with the theft. In other words, "[t]here was no evidence, not even circumstantial, to indicate [the defendant] was 'willfully furthering the success of the venture.'" 237 Kan. at 149.

As our Supreme Court subsequently explained, "The key to the *Green* court's analysis is the evidence." *State v. Ly*, 277 Kan. 386, 395, 85 P.3d 1200 (2004). Unlike *Green*, the district court in the present case was presented with evidence to support the State's charge against Mandy. Specifically, Blake testified that Mandy was in the house when he stole the championship rings from his father's bedroom and that she was aware that he had broken into the bedroom on previous occasions. Deputy Carlson's testimony that Mandy told her she knew Blake would typically use a butter knife to break into Timothy's bedroom supports Blake's testimony. In addition, Blake's testimony was also corroborated by Detective Thomas' testimony that Mandy told him Timothy should have installed a dead bolt on his bedroom door.

Blake further testified that after he and Mandy agreed to sell the championship rings for methamphetamine, it was Mandy who actually arranged the sale with Wolverton. In particular, Blake testified that Mandy took pictures of the rings and sent them to Wolverton. This testimony was supported by the photos in Exhibit 3, which depict what appears to be a woman's hand holding the 2008 NCAA National Championship Basketball ring. Blake testified that it is Mandy's hand in the photographs. It is important to note that Exhibit 3 was admitted without objection. Furthermore,

8

although Mandy initially denied having Wolverton's number in her cell phone, she ultimately admitted to having his number once Detective Thomas obtained a search warrant for her phone.

Although Mandy argues that there were inconsistencies in Blake's trial testimony, it is not the role of an appellate court to determine the credibility of a witness or to weigh conflicting evidence. *State v. Kettler*, 299 Kan. 448, 469, 325 P.3d 1075 (2014). Rather, it was the role of the district court to determine whether it found Blake's version of events to be credible and to weigh any conflicts in the evidence.

Even without the admission of Exhibits 4 and 5, we find—based on a review of the evidence in a light most favorable to the State—that there is sufficient circumstantial evidence upon which a reasonable fact finder could conclude that Mandy obtained control over the championship rings knowing them to have been stolen by Blake with the intent to permanently deprive his father of possession of the rings. See *State v. Brooks*, 298 Kan. 672, 689, 317 P.3d 54 (2014) (stating that a conviction of even the gravest offense can be based entirely on circumstantial evidence). Moreover we find that there is sufficient circumstantial evidence to establish that Mandy had a belief or reasonable suspicion based on the circumstances known to her that the championship rings were stolen and that the act was done with intent to permanently deprive her father-in-law of possession, use, or benefit of the rings.

*Admission of Exhibits 2, 4, and 5*

Mandy also contends that the State failed to provide an adequate evidentiary foundation to admit Exhibits 2, 4, and 5. "'[A] district court usually has considerable discretion in evidentiary rulings regarding foundation evidence, and its decisions in this regard are reviewed for an abuse of discretion.'" *Garetson Brothers v. American Warrior, Inc.*, 51 Kan. App. 2d 370, 383, 347 P.3d 687 (2015), *rev. denied* January 25, 2016

(quoting *State v. Davis*, 41 Kan. App. 2d 1034, 1037, 207 P.3d 281 [2009]); see also *State v. Robinson*, 303 Kan. 11, 221, 363 P.3d 875 (2015). Abuse of discretion means that the decision was (1) arbitrary, fanciful, or unreasonable; (2) based on an error of law; or (3) based on an error of fact. *Fischer v. State*, 296 Kan. 808, 825, 295 P.3d 560 (2013).

"'The proponent of a particular kind of evidence, whether it be a physical object or the testimony of a witness, is required to lay a foundation before it may be admitted into evidence.'" *Wiles v. American Family Life Assurance Co.*, 302 Kan. 66, 74, 350 P.3d 1071 (2015) (quoting 3 Barbara, Kansas Law and Practice, Lawyers Guide to Kansas Evidence, § 1.9, p. 28 [5th ed. 2013]). The question of whether there was an adequate evidentiary foundation is a question of fact, which is reviewed for substantial competent evidence supporting the district court's finding. *Wiles*, 302 Kan. at 73.

Here, we question whether there was an adequate foundation established for the admission of Exhibits 2, 4, and 5. At the very least, it would seem that the State should have called the technician who downloaded the information from Mandy's cell phone to identify the software used and established the technician's familiarity with the software and confirmed its accuracy. Nevertheless, as indicated above, we find that there is sufficient evidence in the record upon which the district court could have found Mandy guilty of misdemeanor theft beyond a reasonable doubt even without consideration of Exhibits 2, 4, or 5.

Specifically, where an error implicates a statutory but not federal constitutional right, the party benefiting from the error must persuade the court that there is no reasonable probability that the error affected the trial's outcome in light of the entire record for it to be deemed harmless. *State v. Story*, 300 Kan. 702, 708, 334 P.3d 297 (2014); see *State v. Kemp*, 30 Kan. App. 2d 657, 663, 46 P.3d 31 (2002) (applying the nonconstitutional harmless error rule where State failed to lay adequate foundation to admit videotape that contained defendant's confession).

10

As previously discussed, Blake testified that Mandy knew that Blake broke into his father's bedroom and stole the rings. Mandy's comments to Deputy Carlson and Detective Thomas underscored Blake's version of the events. Blake also testified that after they agreed to sell the rings for methamphetamine, Mandy was the person who arranged the sale with Wolverton. Exhibit 3—to which Mandy did not object—depicts a woman's hand holding Timothy's 2008 NCAA National Championship Basketball ring. The hand modeling the rings has what appears to be bits of fingernail polish, which supports Blake's claim that it was Mandy's hand. Lastly, Mandy's admission that she had Wolverton's phone number in her cell phone after initially denying as much, suggests that she had a more extensive relationship with Wolverton than what she claimed. Put simply, there is no reasonable probability that the error of admitting Exhibits 2, 4, and 5 affected the trial's outcome in light of the entire record. Thus, we find any error by the district court in admitting Exhibits 2, 4, and/or 5 into evidence during the bench trial was harmless.

Affirmed.