(202 P.3d 722)
No. 98,621

STATE OF KANSAS, *Appellee,* v. CHARLES CHRISTIAN KRIDER, *Appellant.*

Opinion filed March 6, 2009.

*Jennifer E. Conkling* and *Korey A. Kaul,* of Kansas Appellate Defender Office, for appellant.

*Nathan P. Eberline,* assistant solicitor general, and *Stephen N. Six,* attorney general, for appellee.

Before RULON, C.J., GREENE and HILL, JJ.

RULON, C.J.: Defendant Charles Christian Krider appeals from his jury conviction of intentional second-degree murder. We affirm.

The defendant contends the district court erred in denying defendant's motions for appointment of a venire expert and for a change of venue; granting the prosecution's motion in limine to exclude defendant's alternative-perpetrator theory; denying defendant's motion for new trial based on prosecutor misconduct; instructing the jury on lesser offenses; sentencing the defendant to the maximum presumptive sentence; and denying defendant's motion for a new trial based on newly discovered evidence.

## Underlying Facts

On January 19, 2004, Mary LaFaye Noble was supposed to meet the victim, Judith Shrum, at the victim's house south of Chetopa, Kansas. When the victim did not answer her door or phone, Noble and a neighbor discovered the front door was unlocked, entered the house and searched it, but found only the victim's purse and cell phone sitting on a counter and the victim's car parked in the garage. Noble then called 911.

Although there was no sign of forced entry or a struggle, Noble informed the police she noticed wet towels on the bathroom vanity and clothes and a pillow on the floor of the bedroom, which seemed out of place for the victim, a meticulous housekeeper. Law en-

forcement officers collected the towels from the bathroom, a single hair lying on one towel, and swabs of two stains on the bathroom countertop.

Initially, law enforcement officers feared the victim had harmed herself because of the recent death of her husband. Community members and law enforcement began searching for the victim. On January 21, the victim's house was sealed off as a possible crime scene, and the sheriff's office executed a search warrant on the house a day later, collecting hair from the shower drain and a night-gown and robe from the master bedroom.

Eventually, the victim's partially clothed body was located in a nearby creek on January 23. She had been strangled to death.

The Chetopa police chief filed a report stating he had seen the defendant's vehicle driving in Chetopa at midnight on January 19, 2004. On January 26, two KBI agents interviewed the defendant. The defendant told the agents he had been watching football at a friend's house on January 18 before returning home at about 9 p.m. to play video games for a couple of hours. According to the defendant, around 11 p.m., he drove to some of his property south-east of Chetopa to shoot beavers and returned home around 2 a.m. on January 19, 2004. The defendant told the agents he had met the victim when they both worked for the Chetopa School District in 1996-97. According to the defendant he owned a tilling business and had been to the victim's house to till a garden.

DNA testing on stains from the robe, a towel from the bathroom, and the bathroom vanity revealed a mixture of DNA. Neither the defendant nor the victim could be excluded as contributors to the stains. The defendant's facial hair was found to be consistent with the hair found on the bathroom towel, and his pubic hair was consistent with a hair from the shower drain.

Ultimately, the State charged the defendant with one count of premeditated first-degree murder, in violation of K.S.A. 21-3401, and one count of aggravated battery, in violation of K.S.A. 21-3716. Later, the State filed an amended complaint/information charging the defendant with one court of premeditated first-degree murder, in violation of K.S.A. 21-3401.

The defendant's first trial resulted in a mistrial after the jury could not reach a unanimous decision.

Prior to the second trial, the defendant filed a motion to appoint an expert to conduct a survey to determine if the venue should be changed and a motion for change of venue, arguing the defendant was prejudiced by pretrial media coverage. The district court denied both motions.

At the close of the evidence of the second trial, in addition to first-degree murder, the district court instructed the jury on the lesser included offenses of second-degree murder and voluntary manslaughter, over the defendant's objection. Following deliberation, the jury found the defendant guilty of murder in the second degree. The defendant moved for a new trial, citing multiple errors. The district court denied the motion.

The district court found the defendant's criminal history was category I, denied the defendant's motion for departure, and sentenced the defendant to the upper presumptive sentence of 165 months' imprisonment in the custody of the Secretary of Corrections.

The defendant timely appealed from his conviction and sentencing. While this appeal was pending, the defendant filed another motion for new trial in the district court and a motion for remand and stay of appellate proceedings in this court, contending there was newly discovered evidence regarding the custodian of evidence in the case. We remanded the matter to the district court for the limited purpose of considering the motion for new trial based on newly discovered evidence.

Eventually the district court held a hearing and denied the motion. The denial of this motion is before us in this appeal.

## Venue Issues

On appeal, the defendant's first argument is the district court erred in denying his motion for change of venue claiming he did not receive a trial by a fair and impartial jury. The defendant asserts the pretrial publicity and small size of the community from which the jury was drawn prejudiced the jury pool.

The State responds the defendant offers insufficient evidence of juror bias in light of previous Kansas case law on change of venue.

Change of venue decisions are entrusted to the sound discretion of the district court, and such decisions will not be disturbed on appeal unless there is a showing of prejudice to the substantial rights of the defendant. *State v. Higgenbotham*, 271 Kan. 582, 591, 23 P.3d 874 (2001); see K.S.A. 22-2616(1).

Media publicity alone does not establish prejudice. *State v. Verge*, 272 Kan. 501, 508, 34 P.3d 449 (2001). Clearly, the defendant has the burden to show prejudice exists in the community, "not as a matter of speculation but as a demonstrable reality." *Higgenbotham*, 271 Kan. at 591. Further, the defendant must show that the prejudice was such that it was reasonably certain he or she could not have obtained a fair trial. 271 Kan. at 591-92.

Our Supreme Court has noted a variety of factors that may be considered in determining whether the atmosphere is such that a defendant's right to a fair trial would be jeopardized:

"[T]he particular degree to which the publicity circulated throughout the community; the degree to which the publicity or that of a like nature circulated to other areas to which venue could be changed; the length of time which elapsed from the dissemination of the publicity to the date of trial; the care exercised and the ease encountered in the selection of the jury; the familiarity with the publicity complained of and its resultant effects, if any, upon the prospective jurors or the trial jurors; the challenges exercised by the defendant in the selection of the jury, both peremptory and for cause; the connection of government officials with the release of the publicity; the severity of the offense charged; and the particular size of the area from which the venire is drawn. [Citation omitted.]" *Higgenbotham*, 271 Kan. at 592.

The defendant knits together a variety of voir dire responses and incidents to support his argument. The defendant's complaints can be summarized as follows: only 58 of 107 venire members were questioned; only five of those questioned said they had never heard of the case; two jurors responded to the question of whether they could be impartial by saying they "think" or "feel" they could be; not enough venire members were excused for cause; three venire members stated concerns about the community reaction if they served on the jury; some venire members stated they had read or heard information about the case and had an opinion about it; one

venire member's wife had served on the jury at the first trial and told him the community members blamed the first jury for not convicting the defendant; two venire members provided inconsistent answers; some venire members indicated they "thought" they could be impartial or could "probably" be impartial; and the venire panel was exposed to two venire members expressing their opinion that the defendant was guilty.

Examining the defendant's contentions in light of the factors laid out in *Higginbotham*, clearly there was widespread publicity regarding the victim's murder throughout the community. Although the severity of the offense and the relatively small size of the community may weigh in favor of the defendant's argument, on the other side is the fact jury selection was accomplished in 1 day and only just over half of the venire members needed to be questioned before a jury could be selected. Moreover, the answers provided by the selected jurors indicated they would not be affected by the pretrial publicity and would impartially consider the facts before them.

Nearly all of the responses cited by the defendant involved venire members but not the selected jurors. The purpose of voir dire is to allow the parties to select competent jurors who are without bias, prejudice, or partiality. *State v. Hayes*, 258 Kan. 629, 631, 908 P.2d 597 (1995). Here the venire members who indicated they might be influenced by the community or the publicity surrounding the trial were eliminated either for cause or through the parties' peremptory challenges, leaving a panel of jurors who indicated they could be impartial regardless of any publicity they had encountered. Voir dire served its purpose here, and a jury was chosen comprised of individuals who were not prejudiced by pretrial publicity or community sentiment.

The 12 jurors in this case were either not exposed to pretrial publicity or else stated it would not affect their consideration of the evidence. A number of potential jurors were excused for cause, and the defendant passed the remaining panel for cause. The district court took care during voir dire and trial to ensure the jurors were not prejudiced by the publicity surrounding the case. In light of the voir dire record as a whole and Kansas case law, the de-

fendant has not shown his substantial rights were prejudiced by the venue. We firmly conclude the district court did not abuse its discretion in denying the defendant's motion for change of venue and motion to hire a venire expert.

## Alternative-Perpetrator Theory

The defendant's next contention on appeal is the district court violated the defendant's constitutional right to a fair trial by preventing the defendant from presenting a complete defense. Specifically, the defendant asserts the district court erred in granting the State's motion in limine based on the third-party evidence rule to exclude the defendant's proffered evidence of a third party's culpability.

The State contends the defendant provided nothing but "conjecture," "conspiracy," and "speculation" in accusing the victim's son-in-law, James Cook.

We review a district court's decision on a motion in limine under the abuse of discretion standard. *State v. Oliver*, 280 Kan. 681, 693, 124 P.3d 493 (2005), *cert. denied* 547 U.S. 1183 (2006), *disapproved on other grounds State v. Anderson*, 287 Kan. 325, 197 P.3d 409 (2008). Similarly, a district court's decision under the third-party evidence rule is reviewed for an abuse of discretion. *State v. Brown*, 285 Kan. 261, 303, 173 P.3d 612 (2007).

The purpose of an order in limine is to assure a fair and impartial trial to all parties by excluding from trial inadmissible evidence, prejudicial statements, and improper questions. *State v. Abu-Fakher*, 274 Kan. 584, 594, 56 P.3d 166 (2002). Such an order should be granted if the district court finds (1) the material or evidence at issue will be inadmissible at trial under the rules of evidence; and (2) the mere offer of evidence or statements made during trial concerning the material will likely prejudice the jury. *State v. Horn*, 278 Kan. 24, 37, 91 P.3d 517 (2004).

When the district court grants an order in limine and the evidence is properly excluded at trial, the party limited by the order must make a proffer of the excluded evidence to preserve the issue for appeal. *State v. Evans*, 275 Kan. 95, 99, 62 P.3d 220 (2003).

Here, the defendant made such a proffer during trial and so preserved the issue.

A defendant has the right under the state and federal Constitutions to present the theory of his or her defense. *Evans*, 275 Kan. at 102. "The exclusion of relevant, admissible, and noncumulative evidence, which is an integral part of the theory of defense, violates the defendant's fundamental right to a fair trial." *State v. Baker*, 281 Kan. 997, 1008, 135 P.3d 1098 (2006). However, the right to present a defense is subject to the statutory rules of evidence and case law interpreting those rules. 281 Kan. at 1008.

Here, the district court considered and excluded the evidence under the third-party evidence rule. Both parties cite *State v. Marsh*, 278 Kan. 520, 102 P.3d 445 (2004), *rev'd on other grounds Kansas v. Marsh*, 548 U.S. 163, 165 L. Ed. 2d 429, 126 S. Ct. 2516 (2006), for its discussion of the third-party evidence rule in Kansas. Although *Marsh* was reversed by the United States Supreme Court as to the death penalty issue presented in that case, our Supreme Court has stated that *Marsh* remains good law as to the third-party evidence rule. See *Brown*, 285 Kan. at 303.

In *Marsh*, our Supreme Court stated the third-party evidence rule as follows: " 'Where the State relies on direct rather than on circumstantial evidence for conviction, evidence offered by defendant to indicate a possible motive of someone other than the defendant to commit the crime is incompetent absent some other evidence to connect the third party with the crime.' [Citation omitted.]" *Marsh*, 278 Kan. at 530. The *Marsh* court clarified that the third-party evidence rule "has limited application and is most assuredly subordinate to the general rules of evidence and the statutory definition of relevancy in K.S.A. 60-401(b)." 285 Kan. at 531. The application of the rule requires "the sound exercise of judicial discretion dependent on the totality of facts and circumstances in a given case." 285 Kan. at 531.

While the *Marsh* court appeared to limit the third-party evidence rule to a specific situation, our Supreme Court has since seemed to broaden the rule's application. In *State v. Adams*, 280 Kan. 494, 505, 124 P.3d 19 (2005), our Supreme Court read *Marsh's* statement of the third-party evidence rule as a "totality of

the facts and circumstances" test to determine whether the proffered evidence effectively connects the third party to the crime charged, with motive evidence a component of this totality that may be relevant if there is other evidence connecting the third party to the crime. See *Brown*, 285 Kan. at 302-05. This reading may be supported by a line in *Marsh* in which the court describes the rule it is discussing as "the rule excluding third-party motive evidence." 278 Kan. at 531. Thus, under *Marsh* and *Adams*, it appears that any third-party evidence is to be evaluated under *Adams'* totality of the circumstances test, while third-party motive evidence is further limited as set forth in *Marsh*.

Under the contours of the rule as set forth in *Marsh*, *Adams*, and *Brown*, we are convinced the district court appropriately applied the rule here. The district court evaluated the totality of the defendant's proffered evidence and determined it did not effectively connect Cook to the crime charged. The defendant's proffered evidence was that Cook had a possible motive to commit the crime because his wife would benefit from the inheritance and that as a first-aid officer at the defendant's place of work, Cook could have had the opportunity to collect the defendant's hair from headgear and blood from used bandages to later plant at the crime scene while staying there overnight. This evidence is nothing more than mere speculation and conjecture and does not connect the third party to the crime, and therefore the district court did not err in excluding it. See *Evans*, 275 Kan. at 104-05.

## Prosecutorial Misconduct

The defendant next asserts the State committed prosecutorial misconduct by eliciting statements from a witness, Roy Dean Hart, at the second trial which were not elicited at the first trial. The defendant alleges the State intentionally withheld the witness' new information from the defense after the State discovered the new information a week before the second trial. The defendant argues the new information undercut his defense and may have "tipped the scales in favor of a conviction," therefore requiring reversal and remand for a new trial.

The State contends it was under no duty to disclose the inculpatory evidence to the defense and argues Hart was an endorsed witness by the filing date of the original complaint.

The defendant raised this issue below in a motion for mistrial made after Hart's testimony and in a motion for new trial. The district court denied both motions, finding the State was under no duty to disclose the new testimony to the defense because there was no report generated and Hart was an endorsed witness.

An appellate court reviews a district court's decisions on motions for mistrial and motions for a new trial under an abuse of discretion standard. *State v. Albright*, 283 Kan. 418, 425-26, 153 P.3d 497 (2007); *State v. Mathis*, 281 Kan. 99, 103-04, 130 P.3d 14 (2006). With regard to a motion for mistrial, the party alleging the abuse bears the burden of proving that his or her substantial rights to a fair trial were prejudiced. *Albright*, 283 Kan. at 425-26.

In determining whether the defendant's substantial rights to a fair trial were prejudiced, it may be helpful in some situations for the appellate court to use a prosecutorial misconduct-type analysis. 283 Kan. at 426. This case appears appropriate for such an analysis, due to the nature of the defendant's allegation.

Review of an allegation of prosecutorial misconduct involves a two-step analysis. First, the appellate court must determine whether the prosecutor's conduct fell outside the acceptable boundaries and so actually constituted misconduct. If misconduct occurred, then the second step is for the appellate court to consider whether the misconduct prejudiced the jury against the defendant and denied the defendant a fair trial. See *Albright*, 283 Kan. at 428.

In completing the second step of the analysis, the appellate court considers three factors: (1) whether the misconduct was gross and flagrant; (2) whether the misconduct indicated ill will by the prosecutor; and (3) whether the evidence at trial was of such a direct and overwhelming nature that the misconduct would likely have had little, if any, weight in the minds of jurors. None of the three factors is individually controlling, and the third, harmless error-type factor may not override the first two factors unless the harmless error tests of both K.S.A. 60-261 and *Chapman v. California*,

386 U.S. 18, 22, 17 L. Ed. 2d 705, 87 S. Ct. 824, *reh. denied* 386 U.S. 987 (1967), have been met. *Albright,* 283 Kan. at 428.

The first determination in the analysis here is whether the prosecutor's conduct constituted misconduct.

Hart was endorsed as a witness on the complaint and testified at the preliminary hearing. As we understand, Hart did not testify at the first trial. According to the defendant and the State, part of the defendant's strategy, at both trials, was to suggest someone other than the defendant may have left traces of defendant's DNA in the victim's house while the defendant was tilling the victim's garden. According to the State, after this defense strategy was revealed at the defendant's first trial, the prosecutor spoke with several of the State's endorsed witnesses prior to the second trial to determine whether they had any information regarding the tilling. The State learned Hart had such information, and the information seemed to contradict the defense theory. The State presented Hart's testimony on this issue at the second trial. Hart testified the defendant had only tilled the victim's garden once, about 8 years before the victim's death.

Prosecutors have a positive duty to disclose exculpatory evidence to a defendant. *State v. Francis,* 282 Kan. 120, 150, 145 P.3d 48 (2006). However, there is no such duty as to inculpatory evidence. See *State v. McIntyre,* 259 Kan. 488, 496, 912 P.2d 156 (1996). Indeed, our Supreme Court has held that "to grant a mistrial based on evidence withheld by the prosecution, the evidence must be clearly exculpatory, and the evidence must be material so that its suppression was clearly prejudicial to the defendant." [Citations omitted.] *State v. Aikens,* 261 Kan. 346, 382, 932 P.2d 408 (1997); see *Francis,* 282 Kan. at 150.

The testimony at issue here was inculpatory; consequently, the prosecutor had no independent duty to disclose the evidence to the defendant. The State's failure to disclose was not prosecutorial misconduct and did not prejudice the defendant's substantial rights to a fair trial. Accordingly, the district court did not abuse its discretion in denying the defendant's motion for mistrial and motion for new trial on these grounds.

## Lesser Included Offenses

The defendant's next contention is the district court erred when instructing the jury on the lesser included offenses of second-degree murder and voluntary manslaughter. The defendant asserts his "all-or-nothing" trial strategy required either a conviction of premeditated first-degree murder or else a not guilty verdict.

Before reaching the merits of the defendant's argument, we note our Supreme Court has held a conviction of second-degree murder will not be disturbed on appeal just because the evidence at trial showed premeditation and, "therefore, theoretically precludes any conviction of second-degree murder or other lesser degrees of homicide." *State v. Carpenter*, 228 Kan. 115, 123, 612 P.2d 163 (1980). However, there may be reversible error for a district court to give a second-degree murder instruction over the defendant's objection where there is no evidence to support the instruction. 228 Kan. at 123; see *State v. Cordray*, 277 Kan. 43, 53-55, 82 P.3d 503 (2004).

Under K.S.A. 22-3414(3), the district court has a duty to instruct on any lesser included offenses for which there is some evidence which would reasonably justify a conviction. 277 Kan. at 53-54. The issue raised by the defendant here is essentially whether there was sufficient evidence to support the giving of lesser included instructions under K.S.A. 22-3414(3). We apply a de novo review. See *State v. Gallegos*, 286 Kan. 869, 873, 190 P.3d 226 (2008).

Our Supreme Court has refused to grant a criminal defendant the right to an all-or-nothing defense. Instead, where a defendant tries to assert such a defense, the district court must still be mindful of the court's duty under K.S.A. 22-3414(3), and the question of whether lesser included offense instructions should be given still turns on whether the instructions are supported by the evidence. See *Cordray*, 277 Kan. at 53-55.

Intentional second-degree murder is a lesser included offense of premeditated first-degree murder. The difference between the crimes is the latter includes the element of premeditation. *State v. Jones*, 279 Kan. 395, 401, 109 P.3d 1158 (2005). Intentional second-degree murder is the intentional killing of a human being. K.S.A. 21-3402(a).

To show premeditation here, the State relied upon evidence showing the victim was strangled. Premeditation "is the process of thinking about a proposed killing before engaging in the homicidal conduct." *Jones*, 279 Kan. at 402. Death by strangulation can be strong evidence of premeditation, but such does not necessarily preclude a conviction of second-degree murder. See 279 Kan. at 403-06. Although the defendant in *Jones* requested the second-degree murder instruction rather than objecting, *Jones'* discussion of the issue is valuable in our analysis.

In *Jones*, a strangled body was found in a hotel room registered to the defendant. Witnesses testified the defendant and the victim had previously been seen together several times. The evidence showed the strangulation was at least partially accomplished with an instrument.

Jones was charged with premeditated first-degree murder, and he requested intentional second-degree murder and voluntary manslaughter instructions. The district court denied this request, finding the evidence did not support the instructions. Jones was convicted of premeditated first-degree murder. Our Supreme Court concluded Jones was entitled to a second-degree murder instruction. Although the Supreme Court acknowledged there was "substantial" evidence of premeditation, the court determined a jury "could also reasonably find that no premeditation existed" because of the "complete lack of evidence explaining exactly why [the victim] was killed." 279 Kan. at 403-06. The *Jones* court stated: "While the evidence points to Jones as the perpetrator, legitimate questions exist as to his state of mind at the time of the murder, *i.e.*, whether [the victim] was killed with premeditation or simply with intent, however prolonged." 279 Kan. at 404.

This case presents a similar factual scenario. As in *Jones*, there is evidence pointing to the defendant as the perpetrator but a lack of evidence explaining why the victim was killed. Further, following the State's questioning of the coroner regarding the time required for strangulation, which was most, if not all, of the evidence of premeditation, the defendant's counsel asked questions on cross-examination which were intended to weaken, and may have weakened, the evidence of premeditation.

The defendant claims he "presented no evidence to mitigate premeditation" and raised only the issue of identity, not the manner in which the homicide occurred. Although this defendant does not explain this point further, perhaps the defendant is referring to Kansas case law indicating a defendant offering an alibi defense is not entitled to lesser included instructions because to receive a lesser included instruction a defendant must offer *positive testimony* expressly challenging the State's version of how the crime occurred. See *State v. Lewis*, 256 Kan. 929, 933-35, 889 P.2d 766 (1995). However, the Supreme Court in *Lewis* did not explain how its conclusion meshed with its holding 2 years before in *State v. Coleman*, 253 Kan. 335, 354, 856 P.2d 121 (1993), that "[e]vidence supporting a lesser included instruction may be presented by either the defendant or the State." *Lewis* may not have addressed *Coleman* simply because the State's version of events in *Lewis* did not leave open the possibility of a lesser included offense.

*Lewis* may be distinguished from this case in three ways. First, the defendant did not testify himself and presented no alibi defense through positive testimony, although alibi statements by the defendant were brought out through the testimony of the State's witnesses. See *Jones*, 279 Kan. at 406. Second, the critical point here is not the manner in which the homicide occurred, but the defendant's state of mind. See *State v. Casteal*, No. 94,133, unpublished opinion filed June 30, 2006, rejecting a similar argument by the defendant in a first-degree murder case, who relied on an alibi defense and objected to the giving of an attempted second-degree murder instruction. The third distinction is the State's evidence here, under *Jones*, could support two versions: premeditation *or* mere intent. Under *Coleman*, the State's evidence may support a lesser included instruction.

In light of *Jones* and the evidence presented here, the jury could reasonably have found the defendant intentionally killed the victim without premeditation. The district court did not err in submitting the intentional second-degree murder instruction to the jury.

Voluntary manslaughter is a lesser included offense of first-degree murder. *Gallegos*, 286 Kan. at 874. The jury here was instructed under K.S.A. 21-3403(a), which defines voluntary man-

slaughter as the intentional killing of a human being committed upon a sudden quarrel or in the heat of passion.

Arguably, the State's evidence here could have supported a finding the defendant killed the victim upon a sudden quarrel or in the heat of passion, given the DNA evidence in the victim's bathroom suggesting the defendant's and the victim's blood were mixed.

However, even if the instruction was erroneous, such error was harmless. See *State v. Murray*, 285 Kan. 503, 535, 174 P.3d 407 (2008), if substantial justice has been done, when viewed in light of the whole trial record, errors not affirmatively causing prejudice to the substantial rights of the defendant do not require reversal. The defendant was convicted of second-degree murder, not voluntary manslaughter.

The district court did not commit reversible error in instructing the jury on the lesser included offenses of second-degree murder and voluntary manslaughter.

## The Sentence Imposed

The defendant next asserts the district court violated his rights under the Sixth and Fourteenth Amendments to the United States Constitution by sentencing him to the upper number in the sentencing guidelines grid box. The defendant contends any factors justifying the maximum presumptive sentence were required to be proven to a jury beyond a reasonable doubt. To support its assertion, the defendant cites *Cunningham v. California*, 549 U.S. 270, 166 L. Ed. 2d 856, 127 S. Ct. 856 (2007), and *Apprendi v. New Jersey*, 530 U.S. 466, 490, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000).

The State contends the Kansas Sentencing Guidelines Act (KSGA), K.S.A. 21-4701 *et seq.*, allows the district court the discretion to choose any of the numbers within the assigned grid box and argues this provision does not violate the constitutional dictates of *Cunningham* or *Apprendi*.

Our Supreme Court has recently rejected, in other cases, the same argument offered by the defendant here. See *State v. Cook*, 286 Kan. 1098, 1112-13, 191 P.3d 294 (2008); *State v. Johnson*,

286 Kan. 824, 840-52, 190 P.3d 207 (2008). The *Johnson* court undertook an extensive analysis of this argument, as well as *Cunningham* and *Apprendi*, before concluding that Kansas' statutory scheme allows the district court discretion to choose any sentence within the presumptive box and does not violate the holdings in *Cunningham* or *Apprendi*. 286 Kan. at 840-51.

This court is duty bound to follow Kansas Supreme Court precedent, absent some indication the court is departing from its previous position. *State v. Merrills*, 37 Kan. App. 2d 81, 83, 149 P.3d 869, *rev. denied* 284 Kan. 949 (2007). There being no such indication here, this portion of the defendant's appeal must be dismissed for lack of jurisdiction under K.S.A. 21-4721(c)(1). See *Johnson*, 286 Kan. at 851-52.

## Newly Discovered Evidence

The defendant's final issue is the district court erred in denying his motion for new trial based on newly discovered evidence, namely, the subsequent conviction of the detective who served as the primary evidence custodian in this case. The detective's conviction was for removing guns from the evidentiary locker in unrelated cases and selling them for personal profit. The detective's actions occurred prior to trial in this case. The defendant asserts this information "raises questions not just about [the detective's] credibility, but the foundation and reliability of all of the State's evidence under his control," and presenting it to the jury would likely change the result of the trial.

The State responds the claimed newly discovered evidence relates only to the detective's credibility, which is not a proper basis for a new trial. The State further asserts the information was not material enough to likely produce a different result upon retrial.

This court reviews a district court's decision on a motion for new trial based on newly discovered evidence under an abuse of discretion standard. *State v. Cook*, 281 Kan. 961, 991-92, 135 P.3d 1147 (2006).

There are two prongs to the test for determining whether a new trial based on newly discovered evidence is warranted: "(1) whether the defendant has met the burden of establishing that the

newly proffered evidence could not with reasonable diligence have been produced at trial and (2) whether the evidence is of such materiality that it would be likely to produce a different result upon retrial. [Citation omitted.]" 281 Kan. at 992. New trials on the grounds of newly discovered evidence are not favored, and such motions must be viewed with caution. *State v. Trammell*, 278 Kan. 265, 283, 92 P.3d 1101 (2004).

The district court found, and the parties do not dispute, the first factor was met here. The only question is whether the evidence was material enough to warrant a new trial.

Our Supreme Court has stated a "new trial should not be granted on the basis of newly discovered evidence which tends only to impeach or discredit the testimony of a witness." *State v. Reed*, 256 Kan. 547, 560, 886 P.2d 854 (1994); but see *State v. Norton*, 277 Kan. 432, 436-43, 85 P.3d 686 (2004) (granting defendant in drug possession and sale case a new trial based on newly discovered evidence that confidential informant was subsequently arrested for drug activity).

The defendant contends the detective's actions raise "questions not just about his credibility, but the foundation and reliability" of the State's evidence. "Reliability" is synonymous with "credibility." West's Legal Thesaurus and Dictionary 198 (1985). The defendant acknowledges the State was "asking [the jury] to trust the evidence [the detective] was bringing forward" and contends the jury needed to know of the detective's misdeeds with regards to evidence to assist it "in making that determination of how much to trust that evidence."

Regarding the defendant's challenge as to "foundation," foundation is not a question for the jury, but for the trial judge. See *State v. Sanford*, 250 Kan. 592, 604, 830 P.2d 14 (1992). The defendant's challenge apparently goes to the chain of custody of the evidence presented by the detective. At trial, the detective testified as to the chain of custody of each item of evidence without challenge by the defendant. The test for chain of custody is a reasonable certainty the object has not been materially altered, and any deficiency in the chain of custody goes to the weight of the evidence rather than its admissibility. *State v. Horton*, 283 Kan. 44, 62, 151

P.3d 9 (2007). Arguably, this evidence would relate to credibility, which is disfavored by our Supreme Court as grounds for a new trial. The newly discovered evidence does not show the detective mishandled the evidence in this case, nor is the detective's testimony as to the chain of custody of the evidence contradictory.

Even if the newly discovered evidence rises above mere impeachment evidence, such evidence is not material enough to make it likely there would be a different result on retrial. The district court properly denied the defendant's motion for a new trial based upon newly discovered evidence.

Affirmed.