FILED
United States Court of Appeals
Tenth Circuit

September 26, 2012

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

CHARLES CHRISTIAN KRIDER,

Petitioner-Appellant,

v.

EMMALEE CONOVER, Warden,
Winfield Correctional Facility;
ATTORNEY GENERAL OF KANSAS,

Respondents-Appellees.

No. 12-3108
(D.C. No. 5:11-CV-03010-SAC)
(D. Kan.)

**ORDER AND JUDGMENT**[*]

Before **GORSUCH**, Circuit Judge, **BRORBY**, Senior Circuit Judge, and **HOLMES**, Circuit Judge.

Charles Christian Krider was convicted of second-degree murder. After exhausting his state court remedies, he filed for federal habeas corpus relief under 28 U.S.C. § 2254. The district court denied his § 2254 petition, but granted a certificate of appealability ("COA") on one issue involving the exclusion of

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

third-party perpetrator evidence.  We have jurisdiction under 28 U.S.C. § 1291 and

2253(a) and affirm.

## I.  Factual and Procedural Background

The Kansas Court of Appeals summarized the facts underlying Mr. Krider's

conviction for second-degree murder:

> On January 19, 2004, Mary LaFaye Noble was supposed to meet
> the victim, Judith Shrum, at the victim's house south of Chetopa,
> Kansas. When the victim did not answer her door or phone, Noble and a
> neighbor discovered the front door was unlocked, entered the house and
> searched it, but found only the victim's purse and cell phone sitting on a
> counter and the victim's car parked in the garage.  Noble then called
> 911.
>
> Although there was no sign of forced entry or a struggle, Noble
> informed the police she noticed wet towels on the bathroom vanity and
> clothes and a pillow on the floor of the bedroom, which seemed out of
> place for the victim, a meticulous housekeeper.  Law enforcement
> officers collected the towels from the bathroom, a single hair lying on
> one towel, and swabs of two stains on the bathroom countertop.
>
> Initially, law enforcement officers feared the victim had harmed
> herself because of the recent death of her husband.  Community
> members and law enforcement began searching for the victim.  On
> January 21, the victim's house was sealed off as a possible crime scene,
> and the sheriff's office executed a search warrant on the house a day
> later, collecting hair from the shower drain and a nightgown and robe
> from the master bedroom.
>
> Eventually, the victim's partially clothed body was located in a
> nearby creek on January 23.  She had been strangled to death.
>
> The Chetopa police chief filed a report stating he had seen the
> defendant's vehicle driving in Chetopa at midnight on January 19, 2004.
> On January 26, two KBI agents interviewed the defendant.  The
> defendant told the agents he had been watching football at a friend's
> house on January 18 before returning home at about 9 p.m. to play video
> games for a couple of hours.  According to the defendant, around

11 p.m., he drove to some of his property southeast of Chetopa to shoot beavers and returned home around 2 a.m. on January 19, 2004. The defendant told the agents he had met the victim when they both worked for the Chetopa School District in 1996–97. According to the defendant he owned a tilling business and had been to the victim's house to till a garden.

DNA testing on stains from the robe, a towel from the bathroom, and the bathroom vanity revealed a mixture of DNA. Neither the defendant nor the victim could be excluded as contributors to the stains. The defendant's facial hair was found to be consistent with the hair found on the bathroom towel, and his pubic hair was consistent with a hair from the shower drain.

*State v. Krider*, 202 P.3d 722, 726 (Kan. Ct. App. 2009).

The State of Kansas charged Mr. Krider with one count of premeditated first-degree murder. His first trial resulted in a mistrial after the jury could not reach a unanimous decision.

During the second trial, Mr. Krider sought to introduce circumstantial evidence suggesting that the victim's son-in-law, James Cook, had a motive to commit the crime because his wife would benefit from the inheritance, and that as a first-aid officer at Mr. Krider's workplace, Mr. Cook could have had the opportunity to collect Mr. Krider's hair and blood to later plant at the crime scene to frame Mr. Krider. The State moved for an order in limine prohibiting the defense from presenting such evidence on the grounds that it was speculative and barred by Kansas's third-party evidence rule.

The trial court considered the totality of the circumstances and granted the State's motion on the grounds that Mr. Krider's proffered evidence was mere

- 3 -

speculation and failed to reasonably connect Mr. Cook to the crime. The jury found Mr. Krider guilty of second-degree murder and he was sentenced to a prison term of 165 months. On appeal, Mr. Krider challenged the trial court's exclusion of his third-party perpetrator evidence. The Kansas Court of Appeals upheld his conviction and sentence and the Kansas Supreme Court denied review.

Mr. Krider filed for § 2254 habeas relief in federal court. He raised four claims for relief. The district court denied the habeas petition, but granted a certificate of appealability on one claim: "whether the trial court's application of the 'effective connection' test and exclusion of [Mr. Krider's] third-party perpetrator evidence violated [his] right to present a complete defense." R. at 307-08.

## II. Discussion

In order to be entitled to habeas relief, Mr. Krider must establish that the state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented," *id*. § 2254(d)(2). A state court decision will be "contrary to" clearly established precedent if the state court either "applies a rule that contradicts the governing law set forth in [United States Supreme Court] cases" or "confronts a set of facts that are materially indistinguishable from a decision of th[e] Court and nevertheless arrives at a result different from [Supreme Court] precedent." *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). A state court decision will be an

- 4 -

"unreasonable application of" clearly established precedent if it "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply" or "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Id*. at 407-08.

Kansas's third-party evidence rule prohibits the admission of evidence of a third party's motive to commit a crime, unless "there is other evidence connecting the third party to the crime." *State v. Adams*, 124 P.3d 19, 28 (Kan. 2005) (internal quotation marks omitted), *disapproved of on other grounds by State v. Warrior*, 277 P.3d 1111, 1128 (Kan. 2012). The trial court "must evaluate the totality of facts and circumstances in a given case to determine whether the defense's proffered evidence effectively connects the third party to the crime charged." *Id*.

The Kansas Court of Appeals concluded that the trial court properly applied Kansas' third-party evidence rule by evaluating the totality of Mr. Krider's proffered evidence and determining that it did not effectively connect Mr. Cook to the crime charged. The court noted that the evidence of Mr. Cook's possible motive (wife was the beneficiary of life insurance proceeds) and opportunity to commit the crime and frame Mr. Krider (access to the house and access to Mr. Krider's blood and hair samples from the workplace first aid station) was "nothing more than mere speculation and conjecture and [did] not connect the third party to the crime." *Krider*, 202 P.3d at 729.

- 5 -

Proceeding pro se, Mr. Krider argues that the exclusion of this evidence violated his right to defend himself; was contrary to, or involved an unreasonable application of, clearly established Federal law; and was an unreasonable determination of the facts in light of the evidence presented. He cites to the Supreme Court's decision in *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006), in support of his argument.

In *Holmes*, the Supreme Court reiterated that "well-established rules of evidence permit trial judges to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury." *Id*. at 326. The Court further noted, "[a] specific application of this principle is found in rules regulating the admission of evidence proffered by criminal defendants to show that someone else committed the crime with which they are charged." *Id*. at 327. Third-party evidence may therefore be excluded "where it does not sufficiently connect the other person to the crime, as, for example, where the evidence is speculative or remote, or does not tend to prove or disprove a material fact in issue at the defendant's trial." *Id*. (internal quotation marks omitted). The Court explained that such third-party evidence rules "are widely accepted." *Id*.

The *Holmes* court did find error in South Carolina's application of its third-party evidence rule, however, because "the South Carolina Supreme Court radically changed and extended the rule." *Id*. at 328. The South Carolina court applied a rule "that where there is strong evidence of [a defendant's] guilt, especially

where there is strong forensic evidence, the proffered evidence about a third party's alleged guilt may (or perhaps must) be excluded." *Id*. at 329 (internal quotation marks omitted). The Court explained that the rule applied by South Carolina did not rationally serve the end that the third-party evidence rules were designed to promote—"to focus the trial on the central issues by excluding evidence that has only a very weak logical connection to the central issues." *Id*. at 330.

The state court's application here of Kansas's third-party evidence rule did not result in a decision that was contrary to, or an unreasonable application of, clearly established Federal law, and its decision was not based on an unreasonable determination of the facts in light of the evidence. The Kansas rule is consistent with the Supreme Court's description of proper third-party evidence rules in *Holmes* because the focus of the rule is on whether the proffered evidence tends to show that a third-party committed the crime, as opposed to on the strength of the evidence against the accused, as was the case with South Carolina's rule. Thus, without running afoul of clearly established federal law, the state court applied the Kansas rule to exclude Mr. Krider's proffered evidence that Mr. Cook had the motive and opportunity to murder the victim and frame him because the evidence was speculative and did not show an effective connection between Mr. Cook and the crime charged.

Accordingly, we AFFIRM the judgment of the district court.

Entered for the Court


Jerome A. Holmes
Circuit Judge