NOT DESIGNATED FOR PUBLICATION

No. 120,398

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

SCOTT R. BOLLIG,
*Appellant*.


MEMORANDUM OPINION

Appeal from Trego District Court; GLENN R. BRAUN, judge. Opinion filed February 21, 2020. Reversed and remanded with directions.

*Daniel C. Walter*, of Walter & Walter, LLC, of Norton, for appellant.

*Natalie Chalmers*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.


Before POWELL, P.J., PIERRON and ATCHESON, JJ.


PER CURIAM: A jury sitting in Trego County District Court in late 2015 convicted Defendant Scott Robert Bollig of conspiracy to commit murder for plotting to cause his pregnant girlfriend to miscarry. Terry Eberle, then the WaKeeney police chief, participated in the criminal investigation and testified as a State's witness in pretrial hearings and the trial. In May 2017, the Trego County Attorney charged Eberle with multiple felonies at least some of which entailed malfeasance as police chief. About four months later, the county attorney informed Bollig's lawyer that Eberle had acknowledged giving false testimony in this case. Armed with that information, Bollig's lawyer filed a motion for a new trial under K.S.A. 2019 Supp. 22-3501(1).

1

After a nonevidentiary hearing on the new trial motion in November 2018, the district court filed a short journal entry denying Bollig any relief. On Bollig's appeal, we find the district court took too narrow a view of Eberle's misconduct and should have held an evidentiary hearing. In addition, the district court's findings are so terse we would be hard pressed to make a meaningful appellate review of them. We, therefore, reverse the district court's ruling denying the motion for a new trial and remand for further proceedings, including an evidentiary hearing.

FACTUAL AND PROCEDURAL HISTORY

In explaining our decision, we dispense with a detailed discussion of the facts underlying Bollig's prosecution—they are convoluted and largely extraneous to our determination that the district court acted prematurely in denying the new trial motion. The parties, of course, are familiar with the circumstances, and we captured an overview in ruling on Bollig's earlier appeals in this case. See *State v. Bollig*, No. 115,408, 2018 WL 1976689 (Kan. App. 2018) (unpublished opinion) (affirming in part and remanding in part for further consideration of suppression issue); (*Bollig I*); *State v. Bollig*, No. 115,408, 2018 WL 3945934 (Kan. App. 2018) (unpublished opinion) (affirming denial of motion to suppress following remand) (*Bollig II*).

The State's evidence against Bollig showed that he secretly placed an abortifacient in his girlfriend's food. She miscarried several days later. The girlfriend testified at trial that Bollig had confessed to her after her miscarriage. Bollig testified in his own defense and told the jury he had obtained Mifepristone and Misoprostol, drugs administered sequentially as a common form of medication abortion, at his girlfriend's request and she took the Mifepristone herself. Bollig's account didn't mesh well with other evidence and imputed a peculiar course of conduct to his girlfriend in light of that evidence. See *Bollig*

2

*I*, 2018 WL 1976689, at *9-10. He said he never confessed to giving the drug to his girlfriend without her knowledge.

Eberle and Kevin Campbell, an agent with the Kansas Bureau of Investigation, interviewed Bollig at the WaKeeney Police Department on consecutive days about three weeks after Bollig's girlfriend miscarried. Toward the end of the first meeting, Bollig signed consents to search his smartphone and personal computer and turned those devices over to the officers. In a suppression hearing, Bollig testified that he signed the consents because he was told he could have his smartphone back the next day and was promised nothing would happen to him if he cooperated with the investigators. Eberle testified that no threats or promises had been made to Bollig and he knowingly and voluntarily signed the consents. In deciding the suppression against Bollig, the district court specifically credited Eberle's version of the meeting and discounted Bollig's. See *Bollig II*, 2018 WL 3945934, at *1.

A search of the smartphone yielded a series of text messages between Bollig and a nurse with whom he had an ongoing intimate relationship. They discussed drugs that could be used to induce Bollig's girlfriend to miscarry and how she might be tricked into taking them. Those text messages established the conspiracy and were critical to the State's case on that charge.[*]

[*]The State also charged Bollig with intentional first-degree murder for the miscarriage of his girlfriend's fetus. See K.S.A. 2019 Supp. 21-5419 ("unborn child" within definition of "person" as used in statutes criminalizing various degrees of homicide, including first-degree murder). The jury returned a not guilty verdict on the murder charge, a result that can be reconciled with the conspiracy conviction in light of the evidence. See *Bollig I*, 2018 WL 1976689, at *10, n.2.

The day after he turned over his smartphone and computer and signed the consents to search Bollig returned to the police station and was again questioned by Eberle and Campbell. Eberle testified at trial that Bollig admitted making breakfast for his girlfriend

3

one morning and lacing her pancakes with Mifepristone. At trial, Bollig denied making any such statement to Eberle and Campbell.

After Eberle was criminally charged, he entered into a diversion agreement to resolve the case against him. Bollig's lawyer obtained a copy of the diversion agreement, and it was presented to the district court in support of his motion for a new trial. Eberle's diversion agreement basically required him to be law abiding for five years (through February 2023), and if he succeeded, the State would dismiss the charges against him with prejudice. Eberle also agreed not to run for public office or to seek employment as a law enforcement officer during the term of the diversion agreement.

As is common, Eberle's diversion agreement contains a fairly detailed factual statement to which he stipulated; and Eberle acknowledged that if he violated the agreement, the stipulation would be used as the exclusive evidence in the renewed criminal prosecution of him. We do not set out the stipulated facts at length here. The stipulation recites Eberle's testimony at Bollig's preliminary hearing that he did not use video equipment available in the police station to record the two interviews with Bollig and that he had never recorded anybody. During Bollig's trial, Eberle reiterated that the interviews had not been recorded, and he told the jurors he wasn't familiar with the video recording equipment. The stipulation states that Eberle later admitted to a KBI agent that he had recorded interviews of suspects before Bollig's preliminary hearing and trial. In the diversion agreement, Eberle further stipulated that he "intentionally and falsely testified to a material fact . . . during the BOLLIG trial in 2014 and 2015" in that respect.

After receiving Bollig's motion for a new trial and the associated exhibits, including Eberle's diversion agreement, the district court held what it characterized as a "preliminary inquiry" to determine if an evidentiary hearing would be required to decide the motion. Lawyers for the State and Bollig made arguments to the district court but offered no additional evidence in keeping with the limited scope of the hearing. The

4

district court filed a short journal entry about three weeks later denying Bollig's new trial motion. The district court recognized Eberle's diversion agreement and the admissions it contained constituted new evidence under K.S.A. 2019 Supp. 22-3501(1) with respect to Bollig's prosecution. But the district court concluded without any real explanation that the new evidence—presumably meaning the specific stipulations in Eberle's diversion agreement—would not have changed either the outcome of the jury trial or its ruling on the earlier motion to suppress.

Bollig has appealed the denial of his motion for a new trial.

LEGAL ANALYSIS

As provided in K.S.A. 2019 Supp. 22-3501(1), a district court may grant a criminal defendant a new trial "if required in the interest of justice." The statute specifically allows a defendant to seek relief within two years of a final judgment based on newly discovered evidence. Nobody disputes the timeliness of Bollig's motion nor suggests some other procedural obstacle to our consideration of the district court's ruling.

Despite the broad charge in K.S.A. 2019 Supp. 22-3501(1), courts view motions for new trials based on new evidence with disfavor. *State v. Moncla*, 269 Kan. 61, 64, 4 P.3d 618 (2000); *State v. Krider*, 41 Kan. App. 2d 368, 384, 202 P.3d 722 (2009). Courts generally ascribe an assumption of regularity to a jury trial and the resulting verdict—that witnesses take the oath seriously and endeavor to tell the truth as they know it and jurors diligently apply the law they are given to the facts they find to render a true verdict. Newly discovered evidence challenging that assumption often entails an assertion from a reluctant State's witness subpoenaed to testify at trial that he or she did so falsely. And the recanting witness is sometimes a friend, relative, or other associate of the defendant. Recanting witnesses tend to be viewed with skepticism, again on the assumption their trial testimony ought to be accepted absent compelling contrary reasons. See *State v.*

5

*Norman*, 232 Kan. 102, 109, 652 P.2d 683 (1982); *State v. Lewis*, 33 Kan. App. 2d 634, 651, 111 P.3d 636 (2003).

An appellate court reviews the ruling on a motion for a new trial for abuse of discretion. *State v. Phillips*, 309 Kan. 475, 477, 437 P.3d 961 (2019). A district court oversteps that discretion if it rules in a way no reasonable judicial officer would under the circumstances, if it ignores controlling facts or relies on unproven factual representations, or if it acts outside the legal framework appropriate to the issue. See *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 935, 296 P.3d 1106 (2013); *State v. Ward*, 292 Kan. 541, Syl. ¶ 3, 256 P.3d 801 (2011).

Here, the district court applied too narrow a legal framework in denying the motion without an evidentiary hearing and, thus, abused its discretion. A district court should look at an array of factors in determining the need for an evidentiary hearing:

> "'(1) whether the motion alleges facts which do not appear in the original record which, if true, would entitle [the movant] to relief; (2) whether the motion adequately identifies readily available witnesses whose testimony would support these new facts and demonstrate that [the movant] should receive a new trial; and (3) whether [the movant's] newly discovered evidence could have been produced at trial through the exercise of reasonable diligence.'" *Beauclair v. State*, 308 Kan. 284, 296, 419 P.3d 1180 (2018) (quoting *Moncla*, 285 Kan. at 840).

Bollig's motion considered with the stipulation in Eberle's diversion agreement was consistent with those factors and favored an evidentiary hearing. As the district court found, Eberle's admissions of perjury appeared nowhere in the original record of Bollig's prosecution and they could not have been readily discovered leading up to or during Bollig's trial. The new trial motion plainly identified witnesses (Eberle and the KBI agent who questioned him, at the very least) who would support the requested relief.

6

Under the circumstances, Eberle's admission that he gave perjured testimony in Bollig's prosecution, including during the jury trial, was never seriously disputed. That seems more than reasonable. The State prosecuted Eberle for lying under oath and couldn't very well argue his admissions to doing so were credible for that purpose but should have been rejected as of doubtful credibility in considering Bollig's new trial motion. And Eberle's admitted dereliction of duty as a sworn law enforcement officer placed him in a position markedly different from most recanting witnesses. The critical question in deciding Bollig's new trial motion was not whether Eberle provided perjured testimony but the extent of his perjury. Nothing in the diversion agreement suggests the perjurious statements identified there necessarily constituted the universe of Eberle's false testimony. The district court cut off Bollig's ability to answer the critical question by denying his motion without an evidentiary hearing.

At the very least, Bollig should have been given the opportunity to subpoena and produce Eberle for an evidentiary hearing and then to examine him about the extent of the false statements he made in testifying as a State's witness in this case. So Bollig ought to be able to explore the breadth of Eberle's false testimony in this case and, within reasonable limits, his false testimony in other cases. If Eberle serially lied in criminal prosecutions, that pattern would tend to bolster an inference his perjurious testimony against Bollig may have exceeded what he admitted to in the diversion agreement.

We have no way of knowing what Eberle would say in an evidentiary hearing. Neither, of course, did the district court. Moreover, even if Eberle admitted and sought to minimize his perjury on other occasions or denied giving any other perjurious testimony, the district court might be persuaded that those characterizations were themselves prevarications based on Eberle's demeanor and manner in responding to surgical questioning about his misconduct. *State v. Scaife*, 286 Kan. 614, 624, 186 P.3d 755 (2008) ("[T]he ability to observe the declarant is an important factor in determining whether he or she is being truthful."); *State v. Franco*, 49 Kan. App. 2d 924, 936, 319

7

P.3d 551 (2014) ("'The judicial process treats an appearance on the witness stand, with the taking of an oath and the rigor of cross-examination, as perhaps the most discerning crucible for separating honesty and accuracy from mendacity and misstatement.'") (quoting *State v. Bellinger*, 47 Kan. App. 2d 776, 787, 278 P.3d 975 [2012] [Atcheson, J., dissenting]).

In short, an evidentiary hearing could persuade the district court that Eberle gave more false testimony against Bollig than he acknowledged in the diversion agreement. And, in turn, the district court might then take a different view on the merits of Bollig's request for a new trial. The district court could conclude that it should have ruled differently on the suppression motion, which would have substantially limited the State's evidence particularly bearing on the conspiracy, or that a jury realistically might have viewed the evidence differently, depending on the scope of Eberle's perjurious testimony during the trial. Conversely, the district court might well find no legally sufficient reason to grant Bollig a new trial. Either way, however, the district court's conclusion would be based on a full airing of the relevant circumstances, something that seems to have been lost in the denial of the motion summarily based only on the lawyers' arguments. We, of course, do not mean to suggest how the new trial motion ultimately ought to be decided.

For those reasons, we find the district court should have granted Bollig an evidentiary hearing on his motion for a new trial. We, therefore, reverse the denial of the motion and remand for an evidentiary hearing—assuming Bollig still wants one—consistent with this opinion.

Reversed and remanded with directions.